Frank J. Brophy et al., doing business as **F. J. Brophy & Company**, Plaintiffs-Appellants, v. **City of Joliet, Illinois**, Defendant-Appellee.

Gen. No. 10,997.

Second District.

September 4, 1957.

Rehearing denied October 2, 1957.

Released for publication October 2, 1957.

O'Gallagher and Schlax, of Chicago, for plaintiffs-appellants.

Paul F. Brumund, corporation counsel, of Joliet and James V. Bartley, City Attorney, of Joliet, and Ernest H. Pool, of Ottawa, for appellee.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

Plaintiffs, doing business as F. J. Brophy and Company, filed their verified complaint against the defendant, city of Joliet, for breach of contract in connection with the sale of $3,400,000 of Waterworks and Sewerage Revenue Bonds. The defendant filed a motion to dismiss, which, upon hearing, the court sustained, and from an appropriate final judgment against them, the plaintiffs appeal.

The complaint alleged that the plaintiffs are and have been for many years engaged in the business of purchasing and selling municipal bonds and obligations; that the defendant is a municipal corporation organized and existing under the laws of the state of Illinois; that the defendant did, and still does, contemplate the construction of a primary sewerage treatment plant on land owned by and under control of the defendant; that acting under the power granted to it under the provisions of Article 62 of "The Revised Cities and Villages Act" of the state of Illinois, effective January 1, 1942, as amended, the defendant did, on August 2, 1954, introduce Ordinance No. 4108 authorizing and directing the officials of the city of Joliet to issue and sell the bonds therein set forth for the purpose of financing the construction of said sewerage treatment plant; that on August 2, 1954, said ordinance was filed for public inspection; that on August 9, 1954, said ordinance was passed and on August 10 it was recorded, and duly published.

It was then alleged that, pursuant to said ordinance, the plaintiffs, under date of April 15, 1955, submitted to the defendant a proposal to purchase said bonds in accordance with Ordinance No. 4108; that pursuant to and in compliance with said ordinance, the defendant at a regular meeting of the city council held on April 18, 1955, received plaintiffs' proposal, and by resolution placed it on file with the city clerk; that thereafter, at a regular meeting of the council held on April 25, 1955, the proposal of the plaintiffs theretofore sub-

mitted and placed on file was accepted by resolution and the mayor and city clerk were authorized to sign the contract of sale of said bonds as set forth in said ordinance to plaintiffs.

It was next alleged that the plaintiffs kept in continuous contact with the defendant and were ready, able and willing at all times, and still are, to accept delivery of the aforementioned bonds, and did perform their agreement as set forth in their proposal; that they so advised the defendant on April 29, 1955, May 12, 1955, May 24, 1955, and on June 9, 1955, by letters addressed to the mayor, city council and the corporation counsel of defendant.

It was then alleged that at a special meeting of the city counsel of defendant held on April 28, 1955, and again at a special meeting of the council held on April 30, 1955, the said contract to sell the bonds in question was breached and that subsequently at a regular meeting of the council of defendant held on June 7, 1955, the defendant accepted a proposal of Townsend, Dabney and Tyson of Boston, Massachusetts for the purchase of the bonds described in Ordinance No. 4108 in breach and in violation of its contract with plaintiffs; that under date of June 25, 1955, plaintiffs received a letter from the city clerk of the defendant enclosing plaintiffs' cashier's check in the sum of $25,000, which the plaintiffs had deposited along with their proposal of April 15, 1955, to purchase the bonds in question.

The complaint then concluded that as a result of the aforementioned intentional, deliberate, wrongful and unlawful acts of the defendant, said contract with the plaintiffs has been breached by the defendant, although performance thereof has been duly demanded by the plaintiffs; that said defendant has attempted to rescind its contract with the plaintiffs and as a result of the unlawful breach of the contract and the attempted rescission of the same by the defendant,

446

the plaintiffs are deprived of the profits which they would have otherwise gained if said contract had been carried out, amounting to the sum of $106,250, said sum being the difference between the cost of said bonds to the plaintiffs and the amount the plaintiffs would have received from the sale of said bonds.

Attached to and made a part of the complaint were copies of Ordinance No. 4108, plaintiffs' proposal addressed to the mayor and city council, dated April 15, 1955, the proceedings of the city council had on April 18, 1955, April 25, 1955, April 28, 1955, April 30, 1955, and June 7, 1955, and the letters of plaintiffs or their attorneys to the defendant, dated April 29, 1955, May 12, 1955, May 24, 1955, and June 9, 1955.

The proposal of the plaintiffs directed to the mayor and city council is dated April 15, 1955, and, after referring to the passage of Ordinance No. 4108 by the city on August 9, 1954, and to other matters, then stated: "We make you the following proposal: we will purchase $3,400,000 City of Joliet Waterworks and Sewerage Revenue Bonds, series of 1954, as described in Ordinance No. 4108, said bonds to bear interest at the rate of 3¼ per cent per annum, to be dated September 1, 1954, and to mature on May 1 serially, in the years 1957 to 1991, as described in said ordinance. We will pay for each $1,000 bond $985 and accrued interest to delivery to us in Chicago, Illinois, at a bank mutually agreeable to you and ourselves. Delivery to be accompanied by a complete transcript of all proceedings taken in the issuance of these bonds which will enable you and ourselves to obtain the unqualified approving opinion of Chapman and Cutler, Chicago, Illinois, or some firm of nationally recognized municipal bond attorneys, attesting to the validity of this issue of bonds.

"It is understood and agreed that the parties hereto shall make every effort to promptly consummate this

transaction. This offer is made for delivery of bonds to us by June 1, 1955, and if delivery is made later than that date, in accordance with sound banking procedures, the interest cost to the city shall be adjusted to the time of delivery according to the following formula." (Here follows the formula and certain obligations on behalf of appellants to the effect that they assume the cost of the attorneys' approving opinion and the cost of providing the printed bonds and several other provisions.)

The proposal then concludes: "Attached herewith is a cashier's check payable to the city treasurer of the city of Joliet, Illinois, in the amount of $25,000 as evidence of our good faith, and to be held by him uncashed and to be applied as part payment on the bonds when delivered. The signed acceptance of this proposal shall constitute a contract between the undersigned and the city, and the undersigned agrees to promptly perform their obligations as stated above and the city agrees to deliver the Waterworks and Sewerage Revenue Bonds as described above, all in accordance with this proposal and Ordinance No. 4108 passed August 9, 1954. Submitted this 15th day of April, 1955. F. J. Brophy and Company.

"Accepted for and on behalf of the City of Joliet, Illinois, by a resolution passed this ——— day of ———, 195—, which is hereby acknowledged by the duly, qualified officials.

"_____

Mayor

"_____

City Clerk "

The record discloses that the city of Joliet operates under the optional commission form of municipal government, with a mayor and four commissioners who constitute the city council; that the defendant availed itself of the provisions of the Cities

448

and Villages Act, which authorized it to issue and sell revenue bonds for the purpose of defraying the cost of a combined waterworks and sewerage system payable solely from revenue derived from the operation of such system (Ill. Rev. Stat. 1953, chap. 24, art. 62.) Ordinance No. 4108 was duly passed by the city pursuant to this statutory authority. Section 20 of this ordinance provided: "As soon after this ordinance becomes effective as may be, the council of the city of Joliet shall sell the bonds hereby authorized in such manner as they may hereafter determine . . ." The statute required the corporate authorities to determine the manner of sale (Ill. Rev. Stat. 1953, chap. 24, art. 62, sec. 3) and this power could not be delegated by the council to its mayor and city clerk or to anyone else. (People v. City of Centralia, 1 Ill.App.2d 228, 233; People v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co., 354 Ill. 342, 346; City of Sullivan v. Cloe, 277 Ill. 56, 59.)

In the instant case, if the city council desired to take any action on the proposal submitted by plaintiffs, it was required to do so in accordance with the provisions of the Cities and Villages Act. (Ill. Rev. Stat. 1953, chap. 24, art. 19.) Section 52 of that article provides that every resolution making or authorizing the making of any contract shall remain on file with the municipal clerk for public inspection, in the form in which it is finally passed, at least one week before the final passage thereof.

Section 51 of Article 19 provides: "The Mayor and each Commissioner shall have the right to vote on all questions coming before the council. Three members of the Council shall constitute a quorum and the affirmative vote of three members shall be necessary to adopt any motion, resolution or ordinance." It is then provided: "Upon every vote the 'yeas' and 'nays' shall be called and recorded. Every motion, resolution, or

449

ordinance shall be reduced to writing and read before a vote is taken thereon, and all Council members present at any meeting shall vote thereon." The last paragraph of this section then provides: "The Mayor shall have no power to veto, but every resolution, ordinance or warrant passed or ordered by the council must be signed by the Mayor or by two Commissioners . . . ."

At a regular meeting of the council held at 2:00 o'clock p.m. on April 18, 1955, the mayor and the four commissioners were present. The record of this meeting discloses: "A proposal submitted by F. J. Brophy and Company, 231 South LaSalle Street, Chicago 4, Illinois, to purchase $3,400,000 City of Joliet Waterworks and Sewerage Revenue Bonds, Series of 1954, as described in Ordinance No. 4108, was presented and read. Commissioner Franck moved that said proposal be received and placed on file with the city clerk. Motion seconded by Commissioner Vollmer. (Motion duly reduced to writing and read.) Motion carried by following vote: Ayes; Mayor Janke and Commissioners Daniel, Franck, Vollmer and Whalen; Nays, None."

One week later, according to the record, on April 25, 1955, at 2:00 o'clock, p.m., another regular meeting of the city council was held. The mayor and all four commissioners were present, and at that meeting the record discloses that "Commissioner Franck moved that the Mayor and City Clerk be authorized to sign contract of F. J. Brophy and Company, 231 South LaSalle Street, Chicago 4, Illinois, as presented on April 18 for purchase of $3,400,000 Waterworks and Sewerage Revenue Bonds as per conditions set forth in proposal. Motion seconded by commissioner Vollmer. (Motion duly reduced to writing and read.) Motion carried by the following vote: Ayes; Mayor Janke and Commissioners Franck and Vollmer; Nays,