Edwin Kassoef, J.
This is an action for return of a $500 deposit given to the defendant as partial payment for the purchase of a new truck.
Plaintiff and three of his friends visited defendant’s automobile showroom. Plaintiff, in the presence of his witness, discussed the purchase of a pickup truck with a salesman named Kenyan. Plaintiff testified that he showed defendant’s salesman a color booklet published by the Chrysler Motors Corporation entitled “ Dodge Trucks: 1973, Light-Duty Models.” On the cover of this booklet was a picture of a pickup truck with a space provided behind the front seat of the cab for storage or additional seats. At the bottom of the page was printed ‘‘ Introducing .the All-New Club Cab.” Plaintiff testified that he showed this booklet to Kenyan and pointed to the picture of the pickup on the cover and told the salesman that he wanted that model because of the extra seats in the rear of the cab. Defendant did not have this pickup truck on display. Plaintiff alleges that he then discussed the purchase of certain optional equipment for that model, including a camper that could be mounted on the truck. After selecting the optional equipment, plaintiff signed a printed form order which defendant claims is a binding contract. Neither the dealer nor his representative signed the order. The order contained a brief description of the pickup truck, and the optional equipment. The price of the truck with the optional equipment was $4,862.08. Plaintiff left a $500 deposit.
About six weeks later defendant notified plaintiff that they had received the truck. When plaintiff saw the truck in defendant’s storage yard, he stated that it was not the truck he ordered. The truck delivered did not have the oversized cab. Plaintiff refused to accept the truck. Defendant offered to reduce the price of the truck $250. Plaintiff refused this offer, stating that he needed a pickup with the extra seats. Defendant called other dealers to see if they would accept the truck for sale. No dealer was willing to accept the truck. Defendant refused to order another pickup truck and plaintiff demanded the return of his $500 deposit^which defendant refused to return.
*175 Kenyan testified that during the negotiations for the purchase of the truck he suggested that plaintiff purchase a different model that did not have the oversized cab. He alleged that plaintiff agreed and that the truck delivered was the truck ordered. One of the plaintiff’s witnesses testified that he was present throughout the entire conversation and that plaintiff ordered the pickup with the additional seats.
The court must first determine whether the parties entered into an enforceable contract.
One of the prerequisites of a legally binding agreement arises when one party, the offeror, makes an offer and the party to whom the offer is made, the offeree, accepts. There must be both an offer and an acceptance. If either is lacking, there is no contract.
A unilateral contract consists of a promise for an act, the acceptance consisting of the performance of the act requested, rather than the promise to perform it.
When the offeror extends a promise and asks for a promise in return, and where the offeree accepts the offer by making the requested promise, the agreement is called a bilateral contract. Where the agreement takes the form of a written instrument, the acceptance is effective only when the document has been ¡signed and delivered, unless it was clearly the intention of the parties that the earlier verbal agreement be binding and that the writing act merely as a memorandum or better evidence of the oral contract.
• The printed form agreement before the court was drafted by the defendant and contains the following clause: “ This order cancels and supersedes any prior agreement and as of the date hereof comprises the entire agreement relating to the subject matters covered hereby.” It is clear that the defendant, the offeree, intended that this form agreement be deemed to be the entire contract and any verbal agreements, if contrary to the terms of the written agreement, not be binding.
In the bottom lefthand corner of the agreement there is printed in large underlined type: ‘ ‘ this order shall not become binding UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTIVE. ” (“ Representative ” misspelled in order.) At the bottom of the paragraph containing this sentence is a blank line under which is printed “ purchaser’s signature.” Plaintiff signed on this line. Below this is a blank line which has printed before it “ Accepted By.” Under this line is printed “ Dealer or his Authorized Representative.” This line bears no signature.
*176 On the back of the agreement are printed 10 conditions. The heading on top of this page states: “It is further understood and agreed: The order on the reverse side hereof is subject to the following terms and conditions which have been mutually agreed upon.” Paragraph 10 states: “ This order is subject to acceptance by the dealer, which acceptance shall be signified by the signature of Dealer, Dealer’s Manager or other authorized signature on the reverse side hereof.”
It is obvious that the parties intended the agreement to be bilateral and that the offer by the plaintiff to purchase the pickup be deemed accepted by the defendant only when he or his authorized representative signed the order.
The presenting of the order by the dealer was an invitation to the plaintiff to make an offer to purchase the pickup truck. The signing of the order by the plaintiff constituted an offer by him to purchase the truck. By the printed terms of the agreement only the -signature of the defendant or its authorized representatives would constitute acceptance of the plaintiff’s offer and thus create a binding bilateral contract. In a bilateral contract it is essential that the fact of acceptance be communicated to the offeror. (White v. Corlies, 46 N. Y. 467; Mactier’s Administrators v. Frith, 6 Wend. 103.) The failure of the defendant or his representative to sign the order is conclusive proof that the defendant did not accept the offer. (See Detroit Football Co. v. Robinson, 186 F. Supp. 933 [1960], affd. 283 F. 2d 657.) It was the defendant who drafted the agreement and set forth the manner in which it would accept an offer. The fact that defendant ordered and accepted delivery of a pickup truck does not constitute acceptance under the terms of the agreement. By the terms of the agreement only the signature of the defendant could constitute acceptance. The plaintiff’s refusal to accept the truck constituted a valid revocation of his offer. (See Barber-Greene Co. v. M. F. Dollard, Jr., Inc., 239 App. Div. 655 [1934], affd. 267 N. Y. 545.) As a general rule, an offer may be revoked or withdrawn at any time before it is accepted with certain exceptions set forth in the Uniform Commercial Code. This case does not fall within any of the code exceptions.
The court finds by a fair preponderance of the credible evidence that an enforceable bilateral contract was not formed because of defendant’s failure to accept plaintiff’s offer and that plaintiff validly revoked his offer.
The court has also considered the question of whether the defendant breached the expressed warranty created by section 2-313 of the Uniform Commercial Code, which states -that goods *177 delivered must conform to the sample or description used in the negotiations.
When goods are sold by description or sample, the goods delivered must conform to the description or sample. Failure to do so is a breach of the seller’s express warranty. (See White v. Miller, 71 N. Y. 118; Van Wyck v. Allen, 69 N. Y. 61; Dounce v. Dow, 64 N. Y. 411; Depew v. Peck Hardware Co., 197 N. Y. 528.)
The plaintiff referred to, and relied upon, an illustrated Chrysler truck booklet which was used by both parties throughout the negotiations to describe and illustrate the pickup and its optional equipment. The use of the booklet by the salesman to describe and illustrate the truck and its options created a sale by description or sample, and gave rise to the warranty that the goods delivered would conform to the sample or description used in the negotiations. The plaintiff and one of his witnesses testified that throughout the negotiations the plaintiff kept poining to the picture of the “ Club Cab ” and referring to it as the pickup he wanted to purchase. Plaintiff relied ón the illustration contained in the booklet to be descriptive of the pickup he wanted. (See Crocher-Wheeler Elec. Co. v. Johns-Pratt Co., 164 N. Y. 593.) The order contains the word “ Sweptline ” in its description of the pickup ordered. Kenyan testified that this word referred to another pickup. The court finds, however, that the word ‘ ‘ Sweptline ’ ’ is used throughout the booklet to describe the box construction of the various pickups. The “ Club Cab ” as well as the pickup delivered are referred to in the booklet as “ Sweptlines.”
Based on a fair preponderance of the credible evidence presented, the court rejects Kenyan’s allegation that the plaintiff agreed to purchase another pickup during the negotiations. The fact that the order contains a wheelbase size that is not available on the “ Club Cab ” does not impress the court. In a consumer contract, the court will consider all the evidence before it, not only the technical terminology of a merchant seller.
Even if the court had found a contract was created, the court finds that defendant gave plaintiff an express warranty in accordance with section 2-313 of the Uniform Commercial Code and that defendant did breach that warranty.
The court finds for the plaintiff in the amount of $500, with costs and interest.