THE VILLAGE OF WOODRIDGE, Plaintiff-Appellant, *v.* BOHNEN INTERNATIONAL, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 76-1344

Opinion filed May 15, 1978.

Law Offices of Alfred P. Bianucci, Ltd., of Chicago (Alfred P. Bianucci and Robert B. Spencer, of counsel), for appellant.

Vedder, Price, Kaufman & Kammholz, of Chicago (Thomas J. Reed, of counsel), for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

The question presented is whether the vote of a municipal board of trustees to "recommend" acceptance of a bid constitutes an acceptance so that the bidder will be bound by the terms of its bid. We hold that it does not, and affirm the judgment below.

Plaintiff, Village of Woodridge (Woodridge), advertised for bids from sellers to supply the village with three trucks and attached equipment.

Defendant Bohnen International, Inc. (Bohnen), submitted bids, and included a bid bond in the sum of $7,000, binding defendant Liberty Mutual Insurance Company (Liberty Mutual) as surety. The terms of the bond were that if Bohnen were awarded the contract, it would enter into a contract to supply the trucks at the price bid; but, if it failed to do so, then Bohnen and Liberty Mutual would pay to Woodridge the difference in money between the amount of the bid and the amount for which Woodridge "may legally contract with another party to perform the work if the latter amount be in excess of the former."

The specifications for the bids published by Woodridge required the price bid remain firm for a period of 60 days after the bid opening. The bids were opened on May 20, 1974, and Bohnen was found to be the lowest bidder on each of the three trucks.

On June 6, 1974, the Woodridge board of trustees met and passed the following motions:

> "MOTION by Trustee Murphy seconded by Trustee Campbell *to recommend* to the Mayor and Board of Trustees the acceptance of bid from Bohnen International, Inc. for a 1975, 1700 Lodestar Truck with a sewer cleaning machine, per Rockwell specifications, in the amount of $22,365.72.
>
> * * *
>
> MOTION by Trustee Murphy seconded by Trustee Campbell *to recommend* to the Mayor and Board of Trustees that we award the bid for a 1975 Single Axle International Truck to Bohnen International Inc. in Aurora in the amount of $20,463.64 and also a Tandem 1975 Model F-2050 International Truck in the amount of $24,395.90 to Bohnen International Inc. in Aurora." (Emphasis supplied.)

Thereafter, no purchase order or other writing was sent by Woodridge's mayor or other official to Bohnen announcing that Bohnen had been awarded the contracts within the 60 days following May 20, 1974. There were meetings between village officials and employees of Bohnen during this period, but the parties dispute whether Bohnen was orally notified that it had been awarded the contracts. On July 3, 1974, the attorney for Woodridge wrote to Bohnen and advised that "this matter must be resolved" by July 10 or Woodridge would take legal action against Bohnen and its surety for breach of contract; but the letter did not state that the contracts had been awarded. On September 25, after the 60-day period had expired, the attorney wrote to Bohnen and Liberty Mutual and demanded performance of "the contract awarded to said company by the Board of Trustees of the Village on June 6, 1974 pursuant to said company's bid of May 20, 1974."

On October 14 and 15, Woodridge sent purchase orders to Bohnen for

two of the trucks, and apparently purchased the other truck and necessary equipment elsewhere at a total cost alleged to be $8,490.40 more than the prices submitted by Bohnen in its bids. Woodridge filed this action to recover that sum from defendants Bohnen and Liberty Mutual in September of 1975. The parties filed cross motions for summary judgment, supported by documents, affidavits and memoranda, and the trial court granted defendants' motion and denied plaintiff's motion on July 12, 1976. Woodridge thus appeals from the grant of summary judgment to defendants and the denial of its motion for summary judgment.

Section 57(3) of the Civil Practice Act provides that summary judgment shall be granted on motion "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." (Ill. Rev. Stat. 1975, ch. 110, par. 57(3).) Woodridge contends that the court erred in granting summary judgment to defendants because, as a matter of law, a contract was formed by the resolutions adopted by the village board on June 6, 1974. In the alternative, Woodridge argues that if no contract was formed by the resolutions, there remains the triable question of fact whether actions taken subsequent to June 6, 1974, constituted acceptance and formation of a contract such that summary judgment was precluded.

We find that the motions passed by the board of trustees to "recommend" acceptance of the bids were insufficient to create an acceptance such that a contract was formed. A contract for the sale of goods may be made in any manner sufficient to show agreement (Ill. Rev. Stat. 1973, ch. 26, par. 2—204), but there must be a meeting of the minds. (*Euclid Engineering Corp. v. Illinois Power Co.* (1967), 79 Ill. App. 2d 145, 223 N.E.2d 409.) While under Uniform Commercial Code section 2—206 a written bid need not be effectively accepted only by a written acceptance, but may be accepted in any manner and by any medium reasonable under the circumstances (Ill. Rev. Stat. 1973, ch. 26, par. 2—206), it still must be accepted. Here it was not. Acceptance was only recommended.

The village relies on the motions passed on June 6, 1974, by the board of trustees as clear unequivocal acceptance of the bids of Bohnen. But if the tables were turned and Bohnen was attempting to enforce the contracts against the village, it would not be successful.

> "A proposition or offer made to the proper corporate authorities and an acceptance of the terms thereof by an ordinance, resolution or motion constitutes a contract. The ordinance or other official act accepting the terms of the proposition constitutes assent to the contract on the part of the corporation, as distinguished from a

mere declaration of intention to enter into a contract. So an ordinance granting a right, accepted and acted upon by the grantee, becomes an irrevocable contract. But an ordinance or resolution authorizing the mayor, or other officers to enter into a contract does not of itself create a contract, if not acted upon." (10 McQuillen, Municipal Corporations §29.03 (3d ed. 1966).)

"Similarly, when an offer has been made to a municipal corporation, a vote of the municipal council accepting the offer will constitute a contract. In such a case, the minutes and record of the proceedings of the municipal council constitute a sufficient compliance with the statute of frauds. Care should be taken, however, to distinguish between the vote of a municipal council consisting in and of itself an offer or acceptance and a vote authorizing the executive officers to enter into a contract. In the latter case, the municipality will not be bound until the executive officers have acted." 56 Am. Jur. 2d *Municipal Corporations* §497 (1971).

■■ In *Brophy v. City of Joliet* (1957), 14 Ill. App. 2d 443, 144 N.E.2d 816, the bidder sued for breach of an alleged contract by the village to issue and sell bonds. The city, by resolution, had accepted the bid of plaintiff and authorized the mayor and city clerk to sign the contract of sale. Five days later the city council rescinded their acceptance and accepted the bid submitted by someone else. The court affirmed the trial court's dismissal of the bidder's complaint to recover lost profits because no contract had been formed, since the mayor and city clerk did not sign the contract of sale, citing 38 Am. Jur. *Municipal Corporations* §501 (1941), the language of which is identical to that contained in the second edition quoted above. In the case at bar, no contract was formed because the action recommended, *i.e.*, acceptance by the mayor and the board, was not taken.

■■ Plaintiff argues that use of the word "recommend" was surplusage and meaningless because the motions then were recommendations by the board and the mayor to themselves. But municipal ordinances are to be read by the courts in the same manner as statutes (*City of Chicago v. Witvoet* (1975), 30 Ill. App. 3d 386, 332 N.E.2d 767), and statutes should be construed so that no clause, sentence or word shall be superfluous or void. (*Tan v. Tan* (1972), 3 Ill. App. 3d 671, 279 N.E.2d 486.) We cannot agree that the use of the word "recommend" in the motions was meaningless; if the board intended acceptance instead of recommendation of acceptance, it could have said so in the motions. Since it did not, the village cannot now argue that it meant something else in order to bind another party to a contract.

■■ Plaintiff's alternative position, that triable questions of fact remain

because acceptance was allegedly communicated to defendants after June 6, 1974, begs the question. No other ordinances or motions accepting the bids before the expiration of 60 days were produced by plaintiff, nor was there asserted any other agreement by the mayor and members of the board within the 60 days which accepted the bid, in response to defendants' motion for summary judgment. Without an effective acceptance, communication of an acceptance would be meaningless.

■■ The court did not err in entering summary judgment for defendants, because from the pleadings, exhibits and affidavits on file no issue of fact remained, and the determinative question of law, whether a contract was ever formed between plaintiff and defendants, was correctly answered in the negative.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.