**SOUTHWESTERN STATIONERY AND BANK SUPPLY, INC., An Oklahoma Corporation, Plaintiff-Appellant,**

v.

**HARRIS CORPORATION, A Delaware Corporation, Defendant-Appellee.**

**No. 78–1756.**

United States Court of Appeals, Tenth Circuit.

Argued May 8, 1980.
Decided June 27, 1980.

Jim Ikard, Oklahoma City, Okl. (Carroll E. Gregg of Miskovsky, Sullivan & Miskovsky, Oklahoma City, Okl., with him on the brief), for plaintiff-appellant.

Linda G. Alexander, Oklahoma City, Okl. (John C. Niemeyer and David H. Cole, Oklahoma City, Okl., on the brief) of Foliart, Mills & Niemeyer, Oklahoma City, Okl., for defendant-appellee.

Before McKAY and LOGAN, Circuit Judges, and PECK, Senior Circuit Judge *.

---

\* Of the United States Court of Appeals, Sixth Circuit, sitting by designation.

McKAY, Circuit Judge.

In this diversity action, plaintiff Southwestern seeks damages from Harris for breach of a sales contract. Following a jury verdict for Southwestern, the district court entered a judgment notwithstanding the verdict for Harris. Southwestern appeals.

Southwestern wished to purchase a used printing press from Harris. Following a series of pre-offer contacts, including contacts with a third-party owner of the press, Harris sent Southwestern several copies of a Harris purchase order for the press and also supplied instructions for submitting the order. On April 29, 1976, Southwestern completed the purchase order and forwarded four copies with both a downpayment check and an irrevocable letter of credit for the balance of the purchase price. After a communications hiatus, Harris notified Southwestern on June 10 that the third party would not release possession of the press. Harris returned the uncashed check, the letter of credit, and three copies of the purchase order, none of which bears any Harris notations of acceptance.[1] Southwestern then purchased a comparable new press and instituted this action.

I.

The primary dispute centers on the meaning of the acceptance clause language found on the back of the Harris purchase order. That clause reads:

This order is subject to acceptance by Seller at its home office written herein. Thereupon, Seller shall mail to Purchaser a signed duplicate copy hereof, and the same shall constitute the entire contract between the parties, which shall be changed only by written agreement of the parties. The contract and the notes given hereunder shall be governed by the laws of the State of Ohio. Purchaser has

---

1. The Harris salesman did sign the purchase order as a "witness" in order to assure that he would receive any commission.

retained a copy of this order as signed by it.

The banking by Seller or other disposition of funds paid by Purchaser to Seller or the disposition by Seller of any trade-in equipment offered by Purchaser to Seller hereunder shall not constitute an acceptance of this order by Seller.

Record, vol. 1, at 6. In addition, the purchase order includes on its face the following signature block:

This order is hereby accepted and dated at Seller's Cleveland, Ohio, Office on _____ HARRIS CORPORATION, a Delaware Corporation Sheet Fed Press Division, Seller

By _____

*Id.* at 5. Southwestern argues that the method of acceptance is not made explicit by the document and therefore, under the governing Uniform Commercial Code, any reasonable means of acceptance will suffice. *See* Okla.Stat.Ann. tit. 12A, § 2–206.[2]

The district court initially agreed that the acceptance clause is ambiguous, and the court therefore submitted the contractual existence question to the jury. Upon consideration of the motion for judgment notwithstanding the verdict, however, the court reversed itself, holding that the clause requires written acceptance by Harris. The court concluded that, in the absence of written acceptance, judgment for Harris was mandated.

■ Because this court has the purchase order before it, we are not limited to reviewing the trial court's contractual interpretation under the "clearly erroneous" standard. *See DeBoer Construction, Inc. v. Reliance Insurance Co.,* 540 F.2d 486, 495 (10th Cir. 1976); *Rockwood & Co. v. Adams,* 486 F.2d 110, 112 (10th Cir. 1973). An expanded scope of review is particularly justifiable when the only question is whether contractual terms are, on their face, ambiguous. *See Holtze v. Equitable Life Assurance Society,* 548 F.2d 1037, 1042 (D.C. Cir. 1976).

■ We conclude that the trial court was correct in deciding that, read as a whole, the purchase order is unambiguous in specifying the proper method of acceptance. Any well-trained lawyer can, of course, create ambiguities in interpreting even the most straightforward of sentences. To uphold the judgment notwithstanding the verdict, we need not decide that only one interpretation of the clause is imaginable; it is sufficient that only one is reasonable.

Southwestern focuses on the initial sentence of the acceptance clause. That sentence requires Harris' acceptance but specifies no method. Under the Southwestern theory, the second sentence, requiring the mailing to Southwestern of a signed duplicate copy, delineates a procedure to be followed *after* acceptance has otherwise been effected. The introductory word "thereupon" merely orders the steps in the transaction.

Read out of context, the two sentences may suggest ambiguity. However, read in conjunction with the remainder of the purchase order, the particular terms are not lacking in clarity. Ambiguity does not exist merely because care must be exercised in reading the provisions. Nor does the trial judge's vacillation in interpreting the acceptance clause's meaning in itself indicate the existence of ambiguity as a matter of law. The signature block clearly requires a Harris signature for the contract to be "hereby accepted." That language is subject to only one reasonable interpretation.

We are also unpersuaded by Southwestern's contention that, because the acceptance clause specifically negates one method of acceptance—*i.e.,* Harris' disposition of funds or trade-in equipment—any other reasonable method of acceptance was necessarily permissible. The negation clause simply permits Harris to take reasonable security precautions without attachment of further liability. The prudent addition of this precise clause does not make the remainder of the contract less clear.

---

**2.** It is unimportant whether Oklahoma or Ohio law governs. Both have adopted the relevant portions of the Uniform Commercial Code.

It is true that the Uniform Commercial Code was designed to substitute standards of reasonableness for the overly formalistic rules of commercial common law. Nevertheless, parties retain their power to require specific methods of acceptance. Any other "reasonable manner of acceptance" is sufficient only if the parties have not "otherwise unambiguously indicated by the language or circumstances." Okla.Stat.Ann. tit. 12A, § 2–206(1)(a). Here Harris unambiguously indicated the method of acceptance.[3]

## II.

The district court did not permit Southwestern to amend its pleadings to conform to evidence that, in Southwestern's view, supported theories of fraud, oral contract and implied contract. Although the pretrial order unquestionably contemplated only the written contract claim, Southwestern argues that the court abused its discretion in refusing the amendment.

Pretrial orders provide the parties and the court with a basic understanding of the issues to be tried. The terms of the order are not absolute, however, and amendments to the pleadings may be permitted under the liberal terms of Fed.R. Civ.P. 15(b). When evidence is not objected to, a formal amendment to the pleadings is normally not necessary. Any new issues tried by "express or implied consent of the parties . . . shall be treated in all respects as if they had been raised in the pleadings." Fed.R.Civ.P. 15(b).

Harris made only a nominal objection to the admission of evidence arguably relevant to the fraud, oral contract and implied contract claims. Southwestern therefore argues that these issues were tried by implied consent. The district court ruled, however, that there was no implied consent. Noting that the evidence of oral and implied contract was also relevant on the written contract issue because it concerned the negotiations for that contract, the court said:

So I don't think that it's reasonable to expect the Defendant to get up and object to any and all questions about how this contract was entered into and the conduct of the parties after it was entered into on the basis that the issues that [sic] were being expanded and that the case was being tried on either some other contract than Exhibit A to the pretrial order [the purchase order] or either an oral or implied nature.

Record, vol. 8, at 358. The court was well within its discretion in concluding that the general failure to object did not connote implied consent. "Implied consent may not be inferred merely because evidence relevant to a properly pleaded issue incidentally tends to prove a fact not within the pleadings." *Ellis v. Arkansas Louisiana Gas Co.*, 609 F.2d 436, 440 (10th Cir. 1979). *Cf. Gallegos v. Stokes*, 593 F.2d 372, 374–75 (10th Cir. 1979).

The district court had even stronger grounds to justify exclusion of the fraud issue. The pretrial order specifically noted:

Plaintiff informed the Court that should subsequent discovery indicate that the defendant lacked title to the printing press in question, an amendment to the pretrial order would be required to include a cause of action for fraud.

Record, vol. 1, at 22. That order clearly anticipated an amendment *prior to trial* should an indication of fraud develop. In rejecting the motion to amend at the close of the evidence, the district court stated: "You said if discovery, which was to take place before trial, should indicate fraud you would ask for an amendment. So you took these depositions and you didn't ask for an amendment. That's the only point I would wish to make." Record, vol. 8, at 359. The court has unquestioned power to enforce the amendment procedures specified by the pretrial order.

AFFIRMED.

---

**3.** The precision of the purchase order also negates the Southwestern claim that Harris made an offer to sell when it mailed the purchase order. Although in some circumstances a purchase order may constitute an offer rather than an invitation to receive an offer, the language of this purchase order clearly removes it from that category.