BEARD IMPLEMENT COMPANY, INC., Plaintiff-Appellee, v. CARL
KRUSA, Defendant-Appellant.

Fourth District   No. 4—90—0487

Opinion filed February 21, 1991.—Rehearing denied March 20, 1991.

Dwight H. O'Keefe III and Emmet A. Fairfield, both of Brown, Hay &
Stephens, of Springfield, for appellant.

McClure, Brannan & Hardwick, of Beardstown (Thomas J. Brannan, of counsel), for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

This action involves an alleged breach of contract between plaintiff seller, Beard Implement Company, Inc., a farm implement dealership, and defendant buyer, Carl Krusa, a farmer, for the purchase of a 1985 Deutz-Allis N-5 combine. The dispositive issue on appeal is whether the trial court in a bench trial erred in finding a contract existed between the parties. Specifically, defendant contends that plaintiff never accepted defendant's offer to purchase the combine. We agree and reverse.

At trial, defendant testified that between December 20 and December 23, 1985, he had several conversations with plaintiff's representatives concerning the purchase of a new combine. Defendant owned a 1980 Deutz-Allis N-5 combine at that time. In fall 1985, both spindles on his combine had broken and defendant spoke with plaintiff's representatives about repairing them.

On December 23, 1985, defendant met with plaintiff's representatives at plaintiff's office in Arenzville, Illinois. Defendant testified that one of plaintiff's representatives, either Jim Beard or Gerry Beard, filled out purchase order for a new combine for the price of $52,800 cash and the trade-in of the combine defendant then owned. (See appendix for a copy of this order.) Defendant signed the Allis-Chalmers purchase order, which was dated December 23, 1985. None of plaintiff's representatives signed that order on December 23, 1985, or at any time thereafter. The bottom left corner of this order reads as follows:

"_____

DEALER'S SALESMAN

This order subject to acceptance by dealer.

Accepted by: _____

DEALER"

At the same time defendant signed the purchase order, he also signed a counter check drawn on a local bank in the amount of $5,200. Defendant testified that because he did not have his checkbook, plaintiff provided him with the counter check. The check was undated and intended to represent a down payment on the combine. Defendant testified that the check was not dated because he was to call plaintiff later and let plaintiff know if he wanted to proceed with the transaction. At that time, plaintiff would put a date on the check.

Defendant testified that he had misgivings over the Christmas weekend and, after discussing the situation with his wife, telephoned plaintiff's manager, Duane Hess, on December 26, 1985, and told Hess that he did not wish to proceed with the transaction. Defendant explained to Hess that defendant and his wife had determined that "the price was too high" and they "did not want to go further into debt to finance the transaction." Defendant testified that Hess told him that if defendant thought the combine was too expensive, Hess would let defendant out of the deal. Hess did not indicate whether he had signed the order.

Earlier on December 26, 1985, defendant had met with a representative of Cox Implement Company. Defendant identified a copy of the order form that one of Cox's salesman had filled out. This order was dated December 26, 1985, but was signed on December 27. Defendant testified that he told Cox's salesman that his price was too high and that defendant could not go through with either that bid or plaintiff's bid. However, after Cox's quoted price was reduced and the figures on the purchase order were scratched out, defendant signed the purchase order with Cox on December 27, 1985. Defendant stated the agreement with Cox was for the same model combine he was negotiating for with plaintiff but at a lower price. He wanted to consummate the transaction by December 31, 1985, in order to take advantage of the investment tax credit.

Defendant wrote a letter to plaintiff that was dated December 26, 1985, but sent on December 27, 1985. That letter read as follows:

"Dec. 26, '85

Dear Sirs:

As I told you by phone on Dec. 26, '85, I do not wish to purchase the 1985 N-5 combine we talked about so please send me the uncashed counter check on the Bank of Bluffs for the amount of $5,200. Since my 'Purchase Order Sheet' had not yet been signed by the dealer rep, the check wasn't cashed before notification, & the combine wasn't picked up, the [inconvenience] should have been slight.

Feel free to consult my attorney, John D. Coonrod, for details. Again, excuse these changes of events.

Sincerely,
Carl W. Krusa
(FOR 'K' FARMS)"

Defendant testified that Jim Beard visited defendant at his farm around lunchtime on December 27, 1985. During this visit,

Jim told defendant, "There's no problem, Carl, just please send a check to Tony Thomas for his time explaining the differences between models and options." Defendant recalled that their conversation was friendly and that Jim told him something to the effect that, "Carl, we maybe lost a little bit of commission on this, but don't worry about it. I'll make it up on the next sales." Defendant signed the contract with Cox later that afternoon.

Defendant testified that when he spoke with Hess on the evening of December 26, Hess did not indicate that he had signed the order that had been signed earlier by defendant. Defendant testified that in his letter to plaintiff, he enclosed a check for $100 made payable to Thomas for Thomas' time. Defendant believed that once this sum was paid, he was released from any obligation to plaintiff seller.

Jim Beard testified that in fall 1985, he approached defendant several times about purchasing a new combine. Jim testified that he again spoke with defendant about purchasing a new combine at plaintiff's Arenzville office at 3:30 or 4 p.m. on December 23, 1985. Gerry Beard was also present. Jim stated that he did not have the authority to sell the combine at a given price; only Gerry and Hess had that authority. The price quoted by Gerry to defendant was $52,800 and the trade-in of defendant's existing combine. Jim identified the purchase order bearing defendant's signature. Jim filled in all the other information on that order.

Jim testified that defendant did not make any statements that he was going to consider the purchase further after signing the purchase order. Jim also stated that defendant did not make any statements to the effect that the purchase order was not to be considered a completed contract.

Jim identified the counter check payable to plaintiff for $5,200. He stated that he filled out the check and defendant signed it, but that he forgot to fill in the date on the check. Jim did not recall any statement made by defendant that the check should be held. Jim recalled that the purchase order and check were signed at approximately 5:30 p.m. He stated that defendant was not threatened or told that he could not leave the office until he signed the order. Jim stated that he would not have signed the order if defendant had said anything about reserving the right to call back later and cancel the deal.

Jim next spoke with defendant on December 27, 1985. Hess told Jim that defendant did not want to buy the combine and asked Jim to visit defendant. Jim met with defendant that same day and

asked defendant why he could not buy the combine. Defendant told him that he could not afford it. Jim stated that defendant did not mention that he had purchased a combine from someone else.

On cross-examination, Jim admitted that he did not sign the purchase order which defendant had signed. He testified that Gerry and Hess are authorized to accept offers on behalf of plaintiff, but that neither one signed the order.

Gerry Beard testified that defendant came to plaintiff's office in the afternoon of December 23. Gerry stated that he attempted to persuade defendant to purchase a new combine. Gerry testified that he offered to sell the new combine to defendant for $52,800 and that defendant replied, "I'll take the deal." Defendant then signed the order and counter check and left plaintiff's offices.

Gerry stated that he is authorized to accept contracts on behalf of plaintiff. He testified that he accepted the contract with defendant. Gerry stated that defendant did not indicate, after signing the counter check and purchase order, that the transaction was not a completed deal.

On appeal, defendant argues that the trial court erred in finding that a contract existed between him and plaintiff for the purchase of a combine. Defendant argues plaintiff never accepted defendant's offer to purchase the combine because the purchase order defendant signed required a signature by a "dealer" on behalf of plaintiff for acceptance and none of plaintiff's representatives ever signed that order. Accordingly, defendant's subsequent refusal to "go through with the deal" constituted a valid revocation of his offer.

Plaintiff argues that a contract existed between the parties even before their agreement was reduced to writing. Essentially, plaintiff contends that after the verbal agreement was reached, the terms of that agreement were memorialized on the purchase order, which was then signed by defendant. Further, plaintiff argues that this verbal agreement was evidenced by a counter check, which was also signed by defendant and which represented a down payment on the combine. Plaintiff asserts that it accepted both the purchase order and the down payment by placing those documents in its office.

In deciding whether the offer in the present case has been accepted, this court must first identify both the offeror and the offer. A treatise on contract law provides some guidance on this issue: "A [ ] problem arises when A, through a salesman, has frequently solicited orders from B, the contract to arise when approved by A at A's home office. As we have seen in this situation[,] B is the offeror and A the offeree." J. Calamari & J. Perillo, Contracts §2–18, at 85 (3d ed. 1987).

958

In *Foremost Pro Color, Inc. v. Eastman Kodak Co.* (9th Cir. 1983), 703 F.2d 534, the court considered whether a contract existed based on two unsigned purchase orders. The district court had concluded that no contract existed because the purchase orders were merely offers to buy, inviting acceptance either by a prompt promise to ship or by prompt or current shipment. (*Foremost,* 703 F.2d at 538.) The court of appeals agreed and stated that the weight of authority suggests that purchase orders are not enforceable contracts until accepted by the offeree. *Foremost,* 703 F.2d at 539.

■ In the instant case, the purchase order form signed by defendant constitutes an offer made by defendant to plaintiff. Thus, this court needs to determine whether defendant's offer was accepted by plaintiff.

Section 2—206 of the Uniform Commercial Code—Sales (Code) states the following:

"(1) Unless otherwise unambiguously indicated by the language or circumstances

(a) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;

(b) an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods, but such a shipment of non-conforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer.

(2) Where the beginning of a requested performance is a reasonable mode of acceptance an offeror who is not notified of acceptance within a reasonable time may treat the offer as having lapsed before acceptance." (Ill. Rev. Stat. 1989, ch. 26, par. 2—206.)

For the purposes of the present case, the key word in this statute is the term "unambiguously." If defendant's offer contained on the purchase order is unambiguous in inviting acceptance only by the signature of plaintiff's "dealer," no contract exists until the purchase order is signed accordingly. If, however, defendant's offer is ambiguous in inviting plaintiff's acceptance, a contract between plaintiff and defendant could be found to exist.

On appeal, defendant has cited several cases supporting the ar-

gument that the purchase order he signed unambiguously invites acceptance only by signature of plaintiff's "dealer." One such case is *Brophy v. City of Joliet* (1957), 14 Ill. App. 2d 443, 144 N.E.2d 816, which involved the sale of revenue bonds. In that case, the court stated that where an offer requires an acceptance to be made in writing, no other form of acceptance can be made. The offer in *Brophy* read as follows:

> " 'The signed acceptance of this proposal shall constitute a contract between the undersigned and the city ***. ***
>
> [ ]Accepted for and on behalf of ***, which is hereby acknowledged by the duly, qualified officials.
>
> [ ] ————————————
> Mayor
> [ ] ————————————   .
> City Clerk' "

*Brophy*, 14 Ill. App. 2d at 448, 144 N.E.2d at 819.

In *La Salle National Bank v. Vega* (1988), 167 Ill. App. 3d 154, 520 N.E.2d 1129, the court dealt with a real estate sales document which was signed by the seller as offeror and clearly stated that a contract would be in full force upon execution by the purchasing trust. The court held that the document did not constitute a valid contract in the absence of acceptance by the written execution of the purchasing trust. The court noted that an offeror has complete control over his offer and its terms of acceptance, and no other mode may be used where a written acceptance is required. *La Salle National Bank*, 167 Ill. App. 3d at 161-62, 520 N.E.2d at 1133.

In *Zinni v. Royal Lincoln-Mercury, Inc.* (1980), 84 Ill. App. 3d 1093, 406 N.E.2d 212, the court wrote the following:

> "Although the modes of a valid acceptance may be varied, the requirement of an acceptance by the offeror still exists. *** Where an order form, containing the buyer's offer, requires the acceptance of the seller, no contract will exist until the seller has manifested acceptance of the offer. [Citation.] The record before us contains no manifestation of the defendant's acceptance of the plaintiff's offer. Although the order form contains a space for the defendant's signature, defendant did not sign it. While we believe defendant's acceptance may be manifested in ways other than its signature, plaintiff's complaint fails to allege an alternative manifestation of defendant's acceptance. Absent an acceptance by the defendant, no contract existed between the parties." *Zinni*, 84 Ill. App. 3d at 1094-95, 406 N.E.2d at 214.

In *Southwestern Stationery & Bank Supply, Inc. v. Harris Corp.* (10th Cir. 1980), 624 F.2d 168, the court held that the seller's purchase order, which provided that the order was " 'subject to acceptance by Seller' " and that " 'Seller shall mail to Purchaser a signed duplicate copy hereof, and the same shall constitute the entire contract between the parties,' " unambiguously specified the proper method of acceptance. (*Southwestern Stationery*, 624 F.2d at 169.) Therefore, in absence of a written acceptance by the seller, there was no contract for the sale of a printing press. The face of that purchase order stated the following:

> " 'This order is hereby accepted and dated at Seller's Cleveland, Ohio, Office on _____ HARRIS CORPORATION, a Delaware Corporation Sheet Fed Press Division, Seller
>
> By _____ , ' "

*Southwestern Stationery*, 624 F.2d at 170.

A case most like the present one is *Antonucci v. Stevens Dodge, Inc.* (N.Y. Civ. Ct. 1973), 73 Misc. 2d 173, 340 N.Y.S.2d 979, where the civil court of the City of New York wrote:

> "When the offeror extends a promise and asks for a promise in return, and where the offeree accepts the offer by making the requested promise, the agreement is called a bilateral contract. Where the agreement takes the form of a written instrument, the acceptance is effective only when the document has been signed and delivered, unless it was clearly the intention of the parties that the earlier verbal agreement be binding and that the writing act merely as a memorandum or better evidence of the oral contract.
>
> The printed form agreement before the Court was drafted by the defendant and contains the following clause: 'This order cancels and supersedes any prior agreement and as of the date hereof comprises the entire agreement relating to the subject matters covered hereby ***.' It is clear that the defendant, the offeree, intended that this form agreement be deemed to be the entire contract and any verbal agreements, if contrary to the terms of the written agreement, not be binding.
>
> In the bottom lefthand corner of the agreement there is printed in large underlined type: '... *THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE.*' *** At the bottom of the paragraph containing this sentence

is a blank line under which is printed 'purchaser's signature.' Plaintiff signed on this line. Below this is a blank line which has printed before it 'Accepted By.' Under this line is printed 'Dealer or his Authorized Representative.' This line bears no signature.

On the back of the agreement are printed ten conditions. *** Paragraph 10 states: 'This order is subject to acceptance by the dealer, which acceptance shall be signified by the signature of Dealer, Dealer's Manager or other authorized signature on the reverse side hereof.'

It is obvious that the parties intended the agreement to be bilateral and that the offer by the plaintiff to purchase the pickup be deemed accepted by the defendant only when he or his authorized representative signed the order.

The presenting of the order by the dealer was an invitation to the plaintiff to make an offer to purchase the pickup truck. The signing of the order by the plaintiff constituted an offer by him to purchase the truck. By the printed terms of the agreement only the signature of the defendant or its authorized representatives would constitute acceptance of the plaintiff's offer and thus create a binding bilateral contract. In a bilateral contract it is essential that the fact of acceptance be communicated to the offeror. [Citations.] The failure of the defendant or his representative to sign the order is conclusive proof that the defendant did not accept the offer. [Citation.] It was the defendant who drafted the agreement and set forth the manner in which it would accept an offer. The fact that defendant ordered and accepted delivery of a pickup truck does not constitute acceptance under the terms of the agreement. By the terms of the agreement only the signature of the defendant could constitute acceptance. The plaintiff's refusal to accept the truck constituted a valid revocation of his offer. [Citation.] As a general rule, an offer may be revoked or withdrawn at any time before it is accepted with certain exceptions set forth in the Uniform Commercial Code. This case does not fall within any of the code exceptions.

The Court finds by a fair preponderance of the credible evidence that an enforceable bilateral contract was not formed because of defendant's failure to accept plaintiff's offer and that plaintiff validly revoked his offer." *Antonucci*, 73 Misc. 2d at ___, 340 N.Y.S.2d at 982-83.

Plaintiff counters defendant's argument by contending that plaintiff was the one to offer the combine to defendant and defendant accepted plaintiff's offer by signing a counter check and giving that check to plaintiff as a down payment on the combine. We are unpersuaded.

■■ ■ We construe section 2—206 of the Code as giving approval to an ancient and cardinal rule of the law of contracts: the offeror is the master of his offer. An offeror may prescribe as many conditions or terms of the method of acceptance as he may wish, including, but not limited to, the time, place, and manner. (*Kroeze v. Chloride Group Ltd.* (5th Cir. 1978), 572 F.2d 1099, 1105.) We also note that contracts are generally construed against the party who drafted the document (see Restatement (Second) of Contracts §206, at 105 (1981)) and that plaintiff drafted the purchase order in the present case, and then gave it to defendant to use for his offer to purchase the combine.

■ Based on the foregoing, we conclude that the purchase order in this case "unambiguously" required the signature by plaintiff's "dealer" in order to be a proper acceptance of defendant's offer. Because plaintiff's "dealer" never signed the purchase order, no contract ever existed.

For the reasons stated, the judgment in favor of plaintiff is reversed.

Reversed.

LUND, P.J., and GREEN, J., concur.

# APPENDIX

**ALLIS-CHALMERS**

## FARM EQUIPMENT
### DEALER'S RETAIL PURCHASE ORDER

**VF VERSATILE**

DATE _12-23_ 19_25_

| | |
|---|---|
| **P U R C H A S E R** NAME _Civil Kiuua_ | **D E A L E R** NAME *Beard Implement Co.* |
| ADDRESS STREET OR ROUTE | ADDRESS |
| CITY ___ STATE ___ ZIP | CITY _Arenzville,_ STATE _Ill._ |
| COUNTY ___ PHONE _154-2295_ | ORDER NUMBER |
| | DELIVER ON OR ABOUT |

I (we), the undersigned, hereby order from you the Equipment described below to be delivered as shown above. This order is subject to your ability to obtain such Equipment from the manufacturer and you shall be under no liability if delivery of the Equipment is delayed or prevented due to labor disturbances, transportation difficulties or for any reason beyond your control.

USED MACHINERY, IF ANY INCLUDED IN THIS ORDER MUST BE CLEARLY INDICATED AS USED

| QTY | CATALOG NO | EQUIPMENT | SERIAL NO | AMOUNT |
|---|---|---|---|---|
| 1 | | N 5 Combine | | |
| | | Feed Heun Reverse | | |
| | | rev-Beau Special | | |
| | | Engine Block Heater | | |
| | | 3" Rasur | | |
| | | H. P Final Drive | | |
| | | Totter Trak 2-3-4 | | |
| | | Cut Reel Speed | | |
| | | Wipers | | |
| | | Pickup | | |
| | | Preferred Panels | | |
| | | Delux Seat | | |
| | | Chaus lut | | |
| | | Single Longe | | |
| | | 20' Series III | | |
| | | header | | |
| | | Hesr-sion Hsrgs Control | | |
| | | 30.5 x 32 | | |
| | | Rear 18' Jock Assist | | |
| | | Duals 6-30 | | |
| | | Caus Head | | |
| | | A M-F M Tope | | |
| | | Radio | | |
| | | Hr. Meter Engine + Machine | | |
| | | | PRICE OF MACHINERY | $ |

**NOTE COMPLETE THIS SECTION WHEN NEW FARM TRACTORS ARE SOLD WITHOUT ROPS (ROLL OVER PROTECTION)**
ROLL OVER PROTECTION (CAB OR ROLL BAR) REFUSED BY PURCHASER

SIGNATURE OF PURCHASER ___

| | |
|---|---|
| PRICE OF MACHINERY | $ |
| FREIGHT HANDLING | $ |
| TOTAL CASH PURCHASE PRICE | $ |
| TRADE IN ALLOWANCE | $ |
| TRADE DIFFERENCE | $ 52,800.00 |
| TAX (TOTAL OR TRADE DIFFERENCE) | $ |
| TOTAL AMOUNT DUE | $ |
| CASH WITH ORDER | $ |
| CASH ON DELIVERY | $ |
| **BALANCE DUE** | $ |

**Check One**
☐ SOLD USED AS-IS. No warranty of any kind has been given by the dealer or his agent.
☐ SOLD USED WITH 50-50 WARRANTY. The dealer hereby guarantees this (these) machine(s) for ___ hours after 19___ with the understanding that necessary repairs made within this period of time will be charged half to the buyer and half to the dealer, of total retail cost of parts and labor used.
☐ Other ___ (specify warranty used)
**SPECIAL AGREEMENTS** ___

### BILL OF SALE FOR PROPERTY TAKEN IN TRADE
For value received I/We hereby bargain and sell, grant and deliver to DEALER named above the following listed machines and certify that such is free of encumbrance unless otherwise noted

| | Serial No | Amount |
|---|---|---|
| N 5 Combine | | |
| 6-30 | | |
| 20' Grain Table | | |

ALL WARRANTY REPAIRS MADE UNDER THIS AGREEMENT must be made in dealer's shop and buyer is responsible for hauling equipment for repair. No warranty is given by the dealer for tires, batteries or accessories, and the buyer is fully responsible for repairs necessitated by accident, misuse or negligence. This guarantee is not transferable.

I hereby agree to the conditions of this order, expressed in the foregoing, constituting a purchase order contract. I hereby certify that I am 21 years of age or older and acknowledge receipt of this order.

DEALER'S SALESMAN ___

This order subject to acceptance by dealer

Accepted by ___
DEALER

_Carl W. Kiuua_
(PURCHASER'S SIGNATURE)

EXHIBIT "A"