**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard J. FRONTERO et al., Defendants-Appellants.**

**No. 71-2055**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Nov. 30, 1971.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Rosner & Rosner, Edmund A. Rosner, New York City, for Kelly; Nancy Rosner, New York City, of counsel.

John J. Meglio, New York City, for Frontero.

Frank Ragano, Tampa, Fla., for Lagana.

John L. Briggs, U. S. Atty., Rudy Hernandez, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

Frontero, Lagana, and Kelly appeal from judgments of conviction based on guilty pleas. Twenty-four co-defendants, including these three, were indicted on thirty-one counts of substantive violations of 18 U.S.C. §§ 2312, 2313, and 2314 [1] and conspiracy to violate these

---

1. Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2312.

Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2313.

Whoever transports in interstate or foreign commerce any goods, wares, mer-

statutes, 18 U.S.C. § 371. Each appeal presents different problems and will be dealt with separately.

I. Frontero

Frontero was convicted of (1) one count of conspiracy to transport, receive, conceal, and sell stolen motor vehicles in violation of 18 U.S.C. § 371, (2) one count of transporting a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 2312, and (3) another count of transporting a motor vehicle in interstate commerce in violation of 18 U.S.C. § 2312. Frontero pleaded guilty to these charges, and his conviction was based on the guilty plea. He was sentenced to five years on the first charge with eligibility for parole under 18 U.S.C. § 4208(a) (2), five years on the second charge to run concurrently with the first sentence, and five years on the third charge to run consecutively.

■ Frontero argues that this Court should review the sentence imposed by the district court and modify that sentence because it is harsh and excessive. *See* Weigel, Appellate Revision of Sentences: To make the Punishment Fit the Crime, 20 Stan.L.Rev. 405 (1968); Kaufman, Appellate Review of Sentences, 32 F.R.D. 249 (1962); Sobeloff, Appellate Review of Sentences, 32 F.R.D.

249 (1962); United States v. Wiley, 7 Cir. 1959, 267 F.2d 453. Frontero suggests a possible approach to appellate review of sentencing through a new interpretation of 28 U.S.C. § 2106 empowering federal appellate courts to "modify" a judgment. This Court, however, has consistently held that "[i]n absence of other constitutional provision or of statute, this Court has no power to review the length of a sentence within the limits permitted by statute". Rogers v. United States, 5 Cir. 1962, 304 F.2d 520; *accord* United States v. White, 5 Cir. 1971, 447 F.2d 493; Rodriquez v. United States, 5 Cir. 1968, 394 F.2d 825.

■■ We need not break new ground in this case, for, even assuming this Court has the power to modify a sentence, this is not a situation for exercise of that power. The sentence imposed by the district court was within statutory limits. *See* Rogers v. United States, *supra*; Sutton v. United States, 5 Cir. 1959, 266 F.2d 529; Hill v. United States, 9 Cir. 1962, 306 F.2d 245. The only colorable argument advanced by Frontero for modification of his sentence is that a co-defendant, North, received the same sentence as Frontero despite the fact that North participated in the conspiracy for over two years and was indicted on twenty-four counts while Frontero par-

chandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any traveler's check bearing a forged counter signature; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce, any tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security or tax stamps, or any part thereof—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

This section shall not apply to any falsely made, forged, altered, counterfeited or spurious representation of an obligation or other security of the United States, or of an obligation, bond, certificate, security, treasury note, bill, promise to pay or bank noted issued by any foreign government or by a bank or corporation of any foreign country.

18 U.S.C. § 2314.

ticipated for only nine months and was indicted on only five counts. This Court, however, has held that differential sentencing, here, the same sentence for an allegedly lesser degree of guilt, is not a ground for modification of a sentence. Rodriquez v. United States, *supra.*

Frontero also presents this Court with statements as to his unblemished character and background and likelihood of rehabilitation. This evidence was before the district court. We see no abuse in the court's exercise of its sentencing discretion. *See* Zaffarano v. Blackwell, 5 Cir. 1967, 383 F.2d 719. Williams v. United States, 5 Cir. 1951, 192 F.2d 39. In short, even if this Court were willing to find the power to review and modify a sentence lawfully imposed, this case does not present a situation calling for the exercise of that power.

■ Frontero also urges reversal because the district judge failed to inform him of derogatory material contained in the pre-sentence report and afford him the opportunity to refute or explain that material. Immediately prior to sentencing the district judge commented:

> [L]et me say that, as you know, a presentence investigation has been conducted in connection with this case. His family background to the extent that you have described it is as related in the presentence investigation. Along the same lines, there is some detail regarding his relationship with the Defendant Kathleen Coughlin over a period of time, which you should know I am aware of, and it also has been brought to my attention through presentence investigation that this particular Defendant was instrumental in involving the Defendant Kelly in particular in this organized operation.

The disclosure of the contents of presentence reports is governed by Rule 32 of the Federal Rules of Criminal Pro-

cedure. This rule provides in pertinent part:

> The court before imposing sentence *may* disclose to the defendant or his counsel all or part of the material contained in the report of the presentence investigation and afford an opportunity to the defendant or his counsel to comment thereon.

(emphasis added.) F.R.Crim.Pro. 32(c) (2). The Supreme Court has noted that Rule 32 "does not make [the presentence report] available to the defendant as a matter of right", Gregg v. United States, 1969, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442, and this Court has held the disclosure to be discretionary. United States v. Thomas, 5 Cir. 1970, 435 F.2d 1303; United States v. Rubin, 5 Cir. 1970, 433 F.2d 442; United States v. Warren, 5 Cir. 1970, 432 F.2d 772; United States v. Bakewell, 5 Cir. 1970, 430 F.2d 721.[2]

The Court affirms Frontero's conviction without modifying his sentence.

### II. Lagana

Lagana pleaded guilty to one count of violating 18 U.S.C. § 371 by conspiring to transport, receive and conceal, and sell stolen motor vehicles. He was sentenced to three years imprisonment. On appeal, Lagana complains that his guilty plea was induced by the trial judge's promise of probation, that he was not put on probation, and that the guilty plea therefore was invalid. Finding no merit to the contention, we affirm.

Lagana's attorney, in his brief before this Court, describes a meeting with the trial judge and the United States Attorney to discuss Lagana's case. According to the brief, the trial judge indicated at this meeting that, if the representations as to Lagana's lack of a prior criminal record were substantiated by the presentence investigation, he would probably place Lagana on probation if he pleaded guilty. Lagana's attorney reported this

---

2. The author of this opinion notes his disagreement with the extremity to which Rule 32 has been pushed. See my dissent in *Bakewell.* 430 F.2d at 723. Because the Court has refused to consider the question en banc and has consistently reaffirmed this position, I feel bound to adhere to the rule of this Circuit. (Wisdom, J.)

conference to the defendant. Although the pre-sentence report substantiated counsel's earlier representations to the district judge, the trial judge, because of Lagana's prior associations with one of the co-defendants, sentenced Lagana to three years imprisonment. After the court denied Lagana's motion to withdraw the plea of guilty and set aside the judgment and sentence, this appeal followed.

■■■ To be valid, a guilty plea must be knowing, intelligent, and voluntary.

[T]he plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant *circumstances and likely consequences.*

Brady v. United States, 1970, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747. *See* Boykin v. Alabama, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. Promises or assurances of a particular sentence may be "inducements" which destroy the voluntariness of the plea and invalidate it. *See* Maner v. United States, 5 Cir. 1970, 429 F.2d 578. Inherent in the "plea bargaining" process is the possibility of a misunderstanding on the part of the participants as to possible consequences of a guilty plea. The defendant is often told by his attorney that a "promise" of a certain sentence has been made in exchange for his plea of guilty when, in fact, the "promise" has come from one, such as the prosecutor, who is in no position to make promises concerning sentencing or has been made by the trial judge in terms of "probably", "maybe", or "I am inclined toward". These "promises" are occasionally communicated to defendants as firm deals. When the defendant is induced to plead guilty on the basis of his misinterpretation of the "promise", the plea may, in certain cases, be invalid because it was based on incomprehension or misinterpretation.

Our review of the validity of the plea is made extremely difficult by the procedure followed in entering a guilty plea. The defendant, believing correctly or incorrectly that he will receive a "bargain" in exchange for his guilty plea, is instructed to, and does, claim total understanding of the charges against him and affirm the total absence of any bargain when questioned by the trial judge. This scenario will sometimes end in a sentence which comports with the defendant's expectations or in, what the defendant feels is, a "double-cross", when the trial judge exercises his discretion and pronounces a sentence more severe than the prosecutor "promised" or the judge supposedly had committed himself to. When this occurs, the defendant *may* (and we emphasize "may") have a claim of an invalid plea based on incomprehension, misinterpretation, or inducement. The defendant, however, must have reasonable grounds for assuming that the bargain would be consummated. He cannot, in the ordinary case, rely on the promise of the prosecutor who has no authority to make sentencing promises, *see* Brown v. Beto, 5 Cir. 1967, 377 F.2d 950; United States v. Lester, 2 Cir. 1957, 247 F.2d 496, or on the inaccurate representations of an overzealous attorney, *see* Holland v. United States, 5 Cir. 1969, 406 F.2d 213. There must be some basis in the record for an appellate court to find that a "bargain" has been made which acted as an inducement and destroyed voluntariness. *See* Machibroda v. United States, 1962, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473; Brown v. Beto, 5 Cir. 1967, 377 F.2d 950; Berlanga v. United States, 5 Cir. 1968, 394 F.2d 615. Often such "deals" are made privately and rarely if ever is a record kept. Therefore, all that an appellate court has is the word of the defendant or defense counsel against the word of the trial judge. At the very least, in such a situation, the defense attorney must assert the existence of the bargain and the events leading to its al-

leged formation. Without at least some indication, even if that indication is only in the form of the insistence of defense counsel at a hearing on a motion to withdraw the guilty plea, that a "bargain" was made and that there was a reasonable basis for reliance on the bargain and that the "bargain" destroyed voluntariness, this Court would have to be clairvoyant to find involuntariness from a silent record. See generally, Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

All that this record contains to support Lagana's claims of a "deal" are conclusory statements by the defendant. The trial judge conducted a full and detailed inquiry into the voluntariness of Lagana's plea.[3] This Court has repeatedly held that, when a defendant tells the trial judge that no "deal" has been made, he cannot later claim inducement based on a "deal". Alvereze v. United States, 5 Cir. 1970, 427 F.2d 1150; Rosenbaum v. United States, 5 Cir. 1969, 413 F.2d 298. In addition, defense counsel, on the record, made statements inconsistent with the existence of a "deal" and supporting the existence of a "possibility" rather than a "deal". At the

sentencing, defense counsel urged probation.

. . . And if Your Honor sees fit to place him on probation, I do submit it most respectfully that in my judgment, my humble judgment, he is a good probationary risk, and that he made one of the conditions that he does go back immediately. He has opportunities to go to work. He says the only reason he hasn't done so is because he didn't know what the outcome of this sentencing would be. If he got a job, he would find it difficult to explain why he had to come down to Florida, but he will go to work.

\* \* \* \* \* \*

. . . and I request most respectfully, Your Honor, that you place this man on probation. I think it would be a good thing for him. I don't think it would serve any useful purpose to send him to jail. I do think he deserves one chance, Your Honor.

At the hearing on Lagana's motion to withdraw the guilty plea, counsel stated:

I didn't know about the others, Your Honor. But in any event, I think I stated to Your Honor that, although I

---

3. THE COURT: My understanding is, Mr. Lagana wishes to withdraw the plea of not guilty as entered in the indictment and tender a plea of guilty.
MR. ROBINSON: That is correct, Your Honor.
THE COURT: Mr. Lagana, is your plea of guilty to Count 1 of the indictment freely, voluntarily and intelligently made?
MR. LAGANA: Yes.
THE COURT: Is your plea of guilty your own independent decision to plead guilty?
MR. LAGANA: Yes, it is.
THE COURT: I take it it is not influenced by any threat, offer or reward or promise of hope of lightened punishment?
MR. LAGANA: No.
THE COURT: Has any promise been made by any government agent or anyone connected with the United States Attorney's Office or anyone else to get you to plead guilty?
MR. LAGANA: No, sir.
THE COURT: You understand that the plea of guilty admits the charges against you?

MR. LAGANA: Yes, sir.
THE COURT: Do you understand the maximum punishment in connection with the offense specified in Count 1 is five years imprisonment and $10,000 fine or both?
MR. LAGANA: Yes.
THE COURT: I take it your plea of guilty to Count 1 is made with the understanding of what you are doing today?
MR. LAGANA: Yes, sir.
THE COURT: You understand by pleading guilty, you waive the right to trial by jury and the Court can impose sentence?
MR. LAGANA: Yes.

\* \* \* \* \*

THE COURT: Mr. Lagana, you heard the report of the Special Agent Dalton Mayo that he just made, and I take it that you also heard the report that he made yesterday?
MR. LAGANA: Yes.
THE COURT: Do you admit the truth of the reports insofar as they pertain to you?
MR. LAGANA: Yes, sir, I do.

didn't expect Your Honor to commit yourself one way or the other, I knew you wouldn't from having talked to Mr. Briggs, I asked the Court if he could give me some indication, and although Your Honor certainly didn't commit yourself—as a matter of fact, you made it crystal clear you couldn't say it in advance, nevertheless, the indication to me was, although it may have been erroneous, the indication to me was if he had no previous record and since he played a minor part, that Your Honor would place him on probation.

I will say that in all sincerity, it may have been an erroneous impression. Certainly that was the impression I gained, and I think Your Honor stated that you would have to wait to see what the pre-sentence investigation brought out, and also whether or not the pre-sentence investigation would bear out he had no prior criminal record.

We are extremely reluctant to go behind a guilty plea because of mere conclusory statements by a defendant. *See* Brady v. United States, 1970, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; McMann v. Richardson, 1970, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763; Parker v. North Carolina, 1970, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785. This record does not support Lagana's claim. The conviction is affirmed.[4]

III. Kelly

Kelly was sentenced to four years imprisonment after a plea of guilty to one count of violating 18 U.S.C. § 371 by conspiring to transport, receive and conceal, and sell stolen motor vehicles. Kelly argues that his guilty plea was taken in violation of Rule 11 of the Federal Rules of Criminal Procedure[5] and was involuntary under the Due Process Clause of the Fifth Amendment. In support of this contention, counsel for Kelly specifically argues: (1) The Court did not personally address Kelly to determine if he understood the nature of the charge against him; (2) Kelly was not informed of the constitutional rights waived as a consequence of his guilty plea; (3) Kelly was not informed of the possible maximum sentence he might receive; and (4) there was no factual basis for the acceptance of the guilty plea.

As to the first contention, the record shows that the district court did interrogate Kelly in accordance with the requirements of Rule 11.[6] The district

---

4. This subject is treated extensively in the American Bar Association Project on Minimum Standards for Criminal Justice, "Standards Relating to Pleas of Guilty" (1968). *See also* Vetri, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U.Pa.L. Rev. 865 (1964).

5. Rule 11 provides:
   A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

6. THE COURT: All right, Mr. Kelly, is your tendered plea of guilty, in respect to Count One of the indictment freely and voluntarily made by you?
   MR. KELLY: Yes, sir.
   THE COURT: Is it your own independent decision to plead guilty unconnected with any promise or threat or offer of reward or lightened punishment, either on the part of the United States Government, U.S. Attorney's Office, your own counsel or anyone else?
   MR. KELLY: No, I do it myself.
   THE COURT: I take it no promise has been made by the Government or by counsel or by anybody else to induce you to plead guilty to Count One?
   MR. KELLY: No.
   THE COURT: Do you understand that a plea of guilty to Count One of the indictment admits the truth of the allegations in the indictment?

judge personally addressed the defendant and made a careful inquiry into the defendant's understanding of the charges against him. The Supreme Court has carefully avoided spelling out specific guidelines as to how the district judge must conduct a Rule 11 inquiry. The Court has, however, been clear that the procedure is flexible.

The nature of the inquiry required by Rule 11 must necessarily vary from case to case, and, therefore, we do not establish any general guidelines other than those expressed in the Rule itself. As our discussion of the facts in this particular case suggests, however, where the charge encompasses lesser included offenses, personally addressing the defendant as to his understanding of the essential elements of the charge to which he pleads guilty would seem a necessary prerequisite to a determination that he understands the meaning of the charge. In all such inquiries, "[m]atters of reality, and not mere ritual, should be controlling." Kennedy v. United States, 397 F.2d 16, 17 (C.A.6th Cir. 1968).

McCarthy v. United States, 1969, 394 U. S. 459, 467 fn. 20, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418. *See* Smith v. United States, 5 Cir. 1967, 378 F.2d 296; Dorough v. United States, 5 Cir. 1967, 385 F.2d 887.

Kelly's reliance on McCarthy v. United States, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, as authority for his argument is misplaced. In *McCarthy,* "the Government repeatedly conceded that the judge did not personally inquire whether petitioner understood the nature of the charge". 394 U.S. at 464, 89 S. Ct. at 1170. In the case at bar, the record reveals not only that the judge personally addressed Kelly but also that he carefully interrogated Kelly on his understanding of the charges. Moreover, in *McCarthy,* the defendant, despite his earlier plea of guilty, later acted in a manner completely inconsistent with the conclusion that he understood the charges against him. At sentencing, McCarthy asserted that his failure to pay taxes was "not deliberate", and that, if he had not been ill, he would have paid the delinquent taxes. This conduct indicated a lack of awareness of the charge since an element of the crime was wilful failure to pay taxes. In the case at bar, Kelly, at all times, behaved in a manner consistent with his guilty plea and consistent with a full understanding of the charges. Even on appeal, he does not allege any lack of understanding of the

MR. KELLY: Yes.

THE COURT: Then you are entering the of guilty to Count One with an understanding completely today of what you are doing?

MR. KELLY: Yes, sir.

THE COURT: Do you understand also that by pleading guilty, you waive a trial by Jury as to Count One, and the Court would impose sentence in due course?

MR. KELLY: Yes.

THE COURT: I will hear Mr. Mayo.

MR. MAYO: Your Honor, on or about the 9/18/68, Mr. Kelly, obtained a Chevrolet Corvette which is specified in Overt Act No. 4 of the indictment.

THE COURT: Of Count One?

MR. MAYO: Yes, sir, of Count One—from Park Slope Chevrolet Company in Brooklyn, New York, and financed the car.

Subsequently, no payment was made, and then on or about November 7, 1968, Mr. Kelly possessed this Corvette in the State of Florida for the purpose of selling it.

THE COURT: All right. Mr. Kelly, you heard the report of Special Agent Dalton Mayo of the FBI.

MR. KELLY: Yes, sir.

THE COURT: Do you admit the truth of that report?

MR. KELLY: Yes, sir.

THE COURT: The Court finds that the plea for guilty entered in respect to Count One of the indictment is freely and voluntarily made by the Defendant, Michael Salvatore Kelly; that the report of the Special Agent Dalton Mayo of the FBI, the truth of which has been admitted by Mr. Kelly, contains all of the essential elements specified in Count One of the indictment.

The Court accepts the plea of guilty to Count One of the indictment tendered by Mr. Kelly in lieu of the previously entered plea of not guilty to that count; that he is adjudged guilty of the offense specified in Count One of the indictment.

charges at the time of the plea. *See* Macon v. United States, 9 Cir. 1969, 414 F.2d 1290.

▪▪ Kelly argues that he was not informed of the constitutional rights waived as a consequence of his guilty plea. The colloquy between Kelly and the district judge reveals the fact that Kelly was informed that his plea constituted a waiver of his right to a jury trial. This, Kelly argues, was not enough. He claims that he should have been informed that his plea constituted a waiver of his right to confront his accusers and his privilege against compulsory self-incrimination. This Court is, however, aware of no precedent, from the Supreme Court or elsewhere, for the proposition that due process requires that a defendant be informed of each and every right which is waived by a guilty plea or that the waiver of these rights is a "consequence", within the meaning of Rule 11, of which a defendant must be personally informed before a guilty plea may be accepted. Carrying Kelly's argument to its logical conclusion, the court, before accepting a guilty plea, would be required to inform a defendant of his right to a speedy and public trial, his right to an impartial jury, his right to compulsory process for obtaining witnesses, his right to be free from cruel and unusual punishment, his right to be free from unreasonable searches and seizures, his right to have excluded from the trial any evidence illegally seized, and many more. We do not read Rule 11 as requiring this; nor do we feel that due process requires this. Kelly relies heavily, in fact solely, on Boykin v. Alabama, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, as authority for this contention. This reliance is misplaced. *Boykin* involved a silent record, where there was absolutely no showing that the guilty plea was intelligently and voluntarily entered. The record in the case at bar reveals affirmative awareness of the "consequences" of a guilty plea.

▪▪ Next, Kelly contends that he was not informed of the possible maximum sentence he might receive. On this record, we cannot say that Kelly was informed of the possible maximum sentence. We recognize that knowledge of the maximum possible sentence may come from any source and need not come from the judge. United States v. Woodall, 5 Cir. 1971, 438 F.2d 1317.[7] Yet, we cannot say that Kelly possessed this knowledge at the time he entered his plea. The judge did not provide the information, and there is no basis in the record for the conclusion that Kelly received the knowledge "from some other source." 438 F.2d at 1318. Although it would seem that this knowledge was imparted to Kelly by his attorney, the record does not substantiate this. The Government argues that the knowledge of the possible maximum sentence came from the sentencing of two co-defendants to the statutory maximum penalty prior to the sentencing of Kelly. This episode, even if it imparted the requisite knowledge to Kelly, did not do so prior to or at the time of the entry of the guilty plea. The Government also argues that the record shows that Kelly was placed on probation in 1962 for conspiracy involving an automobile theft. From this prior criminal involvement, the Government would have us presume that Kelly had knowledge of the maximum possible penalty. Although the prior involvement may have informed Kelly of the maximum possible penalty, the record fails to reveal whether the charges—state or federal, conspiracy or substantive—brought in 1962 were the same as those involved in the current case. This Court has consistently held that the maximum possible term of imprisonment to which a defendant is exposed upon a plea of guilty is a "consequence" of the plea within the meaning of Rule 11 of which the defendant

---

7. Although *McCarthy, supra,* requires that the trial judge personally address the defendant as to his understanding of the consequences of his guilty plea, we do not read *McCarthy* as disapproving the rule of this Circuit that the knowledge of these consequences may come from any source.

must be informed before his plea is accepted. United States v. Woodall, 5 Cir. 1971, 438 F.2d 1317; United States v. Perwo, 5 Cir. 1970, 433 F.2d 1301; Wade v. Wainwright, 5 Cir. 1969, 420 F.2d 898; Tucker v. United States, 5 Cir. 1969, 409 F.2d 1291. The record does not sufficiently indicate knowledge of the maximum penalty. Because Kelly's plea was accepted in violation of Rule 11, he must be "afforded the opportunity to plead anew". McCarthy v. United States, 1969, 394 U.S. 459, 472, 89 S.Ct. 1166, 1174, 22 L.Ed.2d 418.

■ Finally, Kelly contends that there was no factual basis for the acceptance of his guilty plea. Rule 11 requires that "[t]he Court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." F.R.Crim.Pro. 11. This portion of the Rule was explained in McCarthy v. United States, 1969, 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed. 2d 418.

Thus, in addition to directing the judge to inquire into the defendant's understanding of the nature of the charge and the consequences of his plea, Rule 11 also requires the judge to satisfy himself that there is a factual basis for the plea. The judge must determine "that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty". Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge".

(footnotes omitted). *See also* North Carolina v. Alford, 1971, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. The only possible "factual basis" revealed on this record for the acceptance of the guilty plea was the statement of Special Agent Mayo:

MR. MAYO: Your Honor, on or about the 9/18/68, Mr. Kelly obtained a Chevrolet Corvette which is specified in Overt Act No. 4 of the Indictment.

THE COURT: Of Count One?

MR. MAYO: Yes, sir, of Count One—from Park Slope Chevrolet Company in Brooklyn, New York, and financed the car.

Subsequently, no payment was made, and then on or about November 7, 1968, Mr. Kelly possessed this Corvette in the State of Florida for the purpose of selling it.

Not only does this statement not set forth the elements of the crime, but also it fails to establish an adequate factual basis for acceptance of the guilty plea. Because there was not, on this record, an adequate factual basis for acceptance of the guilty plea, Kelly must be allowed to plead anew. McCarthy v. United States, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418.