UNITED STATES of America, Appellee,

v.

Walter J. HARLAN, Defendant,
Appellant.

No. 81–1895.

United States Court of Appeals,
First Circuit.

Argued Sept. 8, 1982.

Decided Dec. 6, 1982.

As Amended Dec. 20, 1982.

Opinion on Rehearing
Feb. 25, 1983.

Corey M. Belobrow, Concord, N.H., by appointment of the Court, with whom R. John Roy, and Law Offices of R. John Roy, Manchester, N.H., were on brief, for defendant, appellant.

Robert J. Lynn, Asst. U.S. Atty., with whom W. Stephen Thayer, III, U.S. Atty., Concord, N.H., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and SWYGERT,* Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

The single issue presented by this appeal is whether the court committed prejudicial error in failing to inform the defendant that, if indigent, he was entitled to court-appointed counsel. We conclude that it did, and reverse.

Defendant Harlan and three others were indicted in June, 1981 for offenses connected with "clocking," viz., setting back, the odometers on used cars prior to their being offered for sale.[1] Defendant at first ap-

---

* Of the Seventh Circuit, sitting by designation.

1. The indictment charged conspiracy to commit mail fraud and to alter motor vehicle odometers and various substantive violations of 15 U.S.C. § 1984, which prohibits the tampering in any way with "the odometer of any vehicle with intent to change the number of miles indicated thereon."

peared with retained counsel for the announced purpose of pleading guilty, as already had his co-defendants. Problems arose during the Rule 11 colloquy, however, when he informed the court that he had acted at the time "under the assumption ... that I wasn't doing a crime ...." The court expressed reluctance to permit the plea in such circumstances, and instructed the defendant and his counsel to discuss the matter further. Following a brief recess, defendant again informed the court that he would not admit a wrongful intent, whereupon the court declined to accept the plea. Counsel then stated,

"Among his discussions with me this morning [defendant] has [sic] a pretty strong expression that he doesn't want me to participate."
Court. "All right."
Defendant. "Your honor, I'd rather defend myself."
Court. "You'd rather proceed without a lawyer?"
Defendant. "Yes."
Court. "All right."

After setting a trial date, the court informed defendant that he could appear pro se if he wished. The U.S. attorney stated that "if [defendant] desires to get counsel, other counsel, or retain Mr. Bussiere [now discharged], that that be a decision he makes pretty quickly ...." The court then instructed the defendant:

"Well, you'll have to make that decision, sir, by next Monday at 5 p.m."
Defendant. "Yes. The only thing I require, your honor, is I want to get all the evidence from Mr. Bussiere ...."

Later, the court asked if there was anything further it could do for anybody, to which there was no reply by defendant.

Trial began with defendant appearing pro se. Before the start of evidence, on the second day, in defendant's presence, the U.S. attorney informed the court, inter alia, that he had received information that defendant believed that he could obtain a mistrial or reversal on the ground that his pro se representation was not voluntary but, rather, was due to indigency. Defendant then stated that at the time of the "hearing Mr. Bussiere informed me that it's going to cost me approximately $1,000 a day for his services. That's what the lawyers get for court appearances full time." ... that since the trial might take two or

three weeks, he could not afford $15,000 for Mr. Bussiere. Defendant did not state whether he had known of his right to appointed counsel, or would have accepted counsel if offered. Nor was he asked. After discussion of other matters the court decided to proceed with the trial with defendant appearing pro se, ruling that "[u]nder all the circumstances he knowingly and willingly waived his right to appointment of counsel."

This action seems sensible at first blush. Defendant had a retained attorney; he had been a criminal defendant before; he had specifically stated his intention to do without a lawyer. The first affirmative indication of a possible indigency claim surfaced only after the first day of trial. It may well be that the court sized up defendant as a clever manipulator. Notwithstanding, the issue of waiver of counsel in a criminal case is not left solely to the seasoned instinct of a trial judge, but is hedged about with definite rules as to the burden and obligations of the court.

The court below, without asking him, and the government on appeal, stressed that defendant never stated that he was indigent. Yet for the court to "find and rule" "that there was never anything said by this defendant that he couldn't afford an attorney" was to put the shoe on the wrong foot. The constitutional right of an indigent defendant to appointed counsel, see Scott v. Illinois, 1979, 440 U.S. 367, 373–74, 99 S.Ct. 1158, 1161–62, 59 L.Ed.2d 383, would be substantially undermined if the burden were on the defendant to know how to prove his claim. Absent special circumstances, the fact that a defendant appears without, or having discharged, counsel, must place at least a burden of inquiry on the court. See Brewer v. Williams, 1977, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424; Carnley v. Cochran, 1962, 369 U.S. 506, 513–16, 82 S.Ct. 884, 888–90, 8 L.Ed.2d 70; Johnson v. Zerbst, 1938, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461. Defendant's decision to proceed pro se at the plea hearing, and his lack of counsel at the exchange on the second day of trial, triggered an obligation on the court's part to inquire into defendant's reasons for appearing pro se. See United States v. Lespier, 1 Cir., 1977, 558 F.2d 624, 630; United States v. Welty, 3 Cir., 1982, 674 F.2d 185, 187; United States v. Tompkins, 2 Cir., 1980, 623 F.2d 824, 828.

█ The court failed to ask defendant if he parted with counsel due to difficulty with fees,[2] and failed to ask him if he wanted other counsel. Moreover, even after defendant did state that counsel's proposed fees were the cause of his appearing pro se, the court did not rectify its failure to have informed him of his sixth amendment rights, nor inquire if he knew of them. Nor did it ask defendant if the U.S. attorney's report of defendant's manipulation was true. A one minute dialogue should have taken care of the whole matter.[3]

Although the total circumstances may be looked to in determining waiver, *e.g., Maynard v. Meachum,* 1 Cir., 1976, 545 F.2d 273, 278, a trial court cannot rely on isolated bits and pieces of evidence. In *United States v. Lespier,* 558 F.2d, ante, at 630, we said, "[W]e think it is advisable in all cases presenting an issue of waiver by conduct for the court to address the defendants directly." *See, also, United States v. Bailey,* D.C.Cir., 1982, 675 F.2d 1292, 1297–1302; *United States v. Welty,* 674 F.2d, ante, at 187–93; *United States v. Tompkins,* 623 F.2d, ante, at 828. Although we have indicated that no set colloquy is required, *see Maynard v. Meachum,* 545 F.2d, ante, at 277–79, and *Fillippini v. Ristaino,* 1 Cir., 1978, 585 F.2d 1163, 1166, we nonetheless have consistently maintained that doubts must be resolved in an unrepresented defendant's favor. The court's action, understandable, perhaps, because there had already been delays, nevertheless attributed to defendant precisely the knowledge and ability that the Constitution presumes he lacks.

The court's error was not rendered harmless, as the government argues, by the fact that defendant initially had counsel. Prior representation proves nothing. *E.g., United States v. Welty,* 674 F.2d, ante, 185. We are unwilling to accept the government's Utopian contention that retained counsel "can be relied upon" to inform defendants how paying their fee can be avoided. Nor, to quote the court, is the fact that defendant "is no stranger to the criminal process," a reference to a single conviction in state court years before at which defendant had been represented by retained counsel, significant. This sole experience would not support a finding that defendant even knew of his rights.

█ The court very likely also relied on defendant's failure to deny the U.S. attorney's hearsay report of his alleged manipulations, as being a tacit admission. The U.S. attorney's remark, however, was but one sentence in a statement occupying two and a half pages of transcript that contained other remarks, to which defendant did reply. To draw a fatal inference against defendant for not making a complete reply would be inconsistent with the basic requirement that waiver must be found to be "competent [and] intelligent." *See Maynard v. Meachum,* 545 F.2d, ante, at 277; *cf., Carnley v. Cochran,* 369 U.S., ante, at 516, 82 S.Ct. at 890 ("offered counsel but intelligently and understandingly rejected the offer"). *See, also, United States v. Welty,* 674 F.2d, ante, at 194.

2. The government's suggestion that the parting was due to disagreement over defendant's attitude on pleading is certainly not the only inference; defendant may have run out of money.

3. It is, of course, true that an uninformed defendant may not have been indigent, and will thereby receive an undeserved reversal. This result, particularly since it could have easily been guarded against, would be less unfortunate than to require a deserving defendant to stand trial without counsel. To put defendant through an appeal, and then hold a hearing, as our dissenting brother suggests, again puts the shoe on the wrong foot. Where there has been an error of constitutional proportions, the burden of showing lack of prejudice should be the government's. If the government wants to contest the indigency question, it should seek to do so by motion or otherwise before we have been burdened with an appeal, rather than afterward.

This is particularly true here, for the government had an opportunity to contest defendant's indigency below and failed to do so. As the government itself conceded at oral argument, the issue of counsel came up again after the verdict, when the district court, at defendant's request, appointed counsel to represent defendant at sentencing. Beyond defendant's affidavit of indigency, no investigation of indigency was made, and no opposition to the appointment offered. To allow indigency hearings after determining lack of waiver on appeal would, as a practical matter, invite a double standard of indigency determinations: in the ordinary course, a relaxed inquiry and heavy reliance—as in the district court here—on affidavit, but on remand following an appellate finding of no waiver, a searching inquiry based on a hotly contested evidentiary hearing.

■ Finally, the government recites in great detail the evidence indicating defendant's guilt, as if to suggest that lack of counsel was harmless error. Whatever might be the inquiry when a defendant's counsel's ability or diligence is questioned as to particular matters, *see United States v. Bosch*, 1 Cir., 1978, 584 F.2d 1113, 1122–23, we would not make that inquiry when representation is completely lacking. *Accord, United States v. Welty*, 674 F.2d, ante, at 194 n. 6. Here, too much speculation is possible.

*Reversed.*

SWYGERT, Senior Circuit Judge, dissenting in part.

I agree with the majority that the district court erred in failing to inform the defendant of the availability of appointed counsel should he be indigent. I disagree, however, with the majority's remedy for that error. Because the original trial was defective only if the defendant was in fact indigent, I would remand for an initial hearing on indigency.

The facts in this case do not establish that the defendant was indigent. During the plea-bargaining stage of the proceedings he had retained an attorney, Emile Bussiere, to represent him, demonstrating some ability to pay for legal services. Bussiere's discharge before trial need not be

interpreted to mean that the defendant lacked the means to retain him; it equally supports the inference that the defendant, who was well-educated, disagreed with his attorney on tactical matters and wished to exercise his right to defend himself.* Even if the discharge was caused by the defendant's inability to pay Bussiere's quoted fee of $1,000 per day, he may still have been able to retain less costly counsel. Because we cannot conclude for a certainty that the defendant was indigent on the basis of the evidence presented on appeal, that determination should be made by the district court on remand. Unless the court concludes that the defendant is entitled to appointed counsel, it will be pointless to hold a new trial.

## OPINION ON PETITION FOR REHEARING

### PER CURIAM:

The government's motion for a rehearing en banc having failed, the majority of the panel itself responds to the argument made in that motion.

The government contends that our dissenting brother's opinion should be adopted, so that, before a retrial is considered, there should be a factual determination of indigency vel non. The government did not argue the issue before, nor does it suggest any change in defendant's financial circumstances during the trial that would render the trial court's post-verdict indigency de-

---

* At the abortive plea-bargaining hearing on October 8, 1981, the following colloquy took place:

THE COURT: ... Brother Bussiere, did you want to put something on the record?

MR. BUSSIERE: I think he may want to, your Honor. Among his discussions with me this morning, he has a pretty strong expression that he doesn't want me to participate.

THE COURT: All right.

THE DEFENDANT: Your Honor, I'd rather defend myself.

THE COURT: You'd rather proceed without a lawyer?

THE DEFENDANT: Yes.

....

THE COURT: ... You may appear pro se, if you wish. We will proceed with trial, and [can you] get your witnesses here by then?

....

[COUNSEL FOR GOVERNMENT]: ... I would suggest ... that the Court ... talk[ ] to the defendant if he desires to get counsel, other counsel, or retain Mr. Bussiere, [and]

that that be a decision he makes pretty quickly so we don't have another delay.

....

MR. BUSSIERE: I guess my understanding is I'm relieved of any responsibility.

THE COURT: You are relieved, Mr. Bussiere, and we thank you, and the Court states for the record that I understand it's not your fault in this situation but these things do happen and the offense here charged does require criminal intent, and if he isn't willing to agree that he formulated that intent, then he's entitled to a trial and let the jury determine one way or the other. All right. Anything further that I can do for anybody at this point?

MR. BUSSIERE: I think maybe I should probably say this much more: I have felt that I had covered the situation with him, your Honor, so that this would not happen in court this morning.

THE COURT: ... But whatever the reason, it's there and he's entitled to have his trial if [he] wants it, and we'll be glad to accommodate him.

termination and appointment of counsel for sentencing invalid as a measure of his indigency and entitlement to counsel for trial. If it had doubts about indigency, and an interest in reducing burdens, it could have suggested a post verdict hearing possibly avoiding an unnecessary appeal. Instead, it would now apply a double standard; little inquiry, as it admits is its custom, if a defendant seeks counsel before trial, but a searching one if he was not informed of his constitutional rights and has been put through an appeal to demonstrate that fact.

After accepting defendant's affidavit with respect to needing appointed counsel for sentencing, the government now says that "two different interests were at stake." There is only one interest. A defendant who fails to make a point at trial cannot ordinarily make it later. We are reminded of what the Court said in *United States v. Shotwell Mfg. Co.*, 1957, 355 U.S. 233, at 244, 78 S.Ct. 245, at 252, 2 L.Ed.2d 234, although in another connection.

"The fair administration of justice is not ... a one way street."

It is late in the game for the government to have second thoughts.