**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Morgan WILLIAMSON,
Defendant-Appellant.**

**No. 85–2749.**

United States Court of Appeals,
Tenth Circuit.

Nov. 28, 1986.

Richard J. Smith, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Jennifer A. Salisbury, Asst. U.S. Atty., with him on the brief), for plaintiff-appellee.

Tova Indritz, Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Before BARRETT, McKAY and TACHA, Circuit Judges.

BARRETT, Circuit Judge.

John Morgan Williamson (Williamson) appeals the United States District Court's dismissal of his motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 and its denial of his petition for writ of error *coram nobis.*

The conviction Williamson now challenges was a 1965 plea of guilty to a violation of 18 U.S.C. § 2312, transporting a stolen vehicle from Shreveport, Louisiana, to Edgewood, New Mexico. Williamson is presently incarcerated in Louisiana on an apparent 1975 manslaughter conviction. He contends that his 1965 plea will adversely affect his parole status from the Louisiana prison system.

At the time of the 1965 indictment, both Williamson and his co-defendant, James Harvey Webster (Webster), who is not a party to this appeal, were 18 years of age. Webster and Williamson each were accompanied by a parent at their arraignment on October 8, 1965. At the arraignment, the judge paraphrased the indictment, verbally separating the offense into its three elements, and advised the defendants of the penalty, the availability of sentencing under the Youth Corrections Act and explained that the Youth Corrections Act could affect the sentencing options. He also advised them of their right to counsel, as well as the availability of appointed counsel free of charge. (R., Vol. II at 2–3.) The judge then advised Williamson and Webster of their right to a jury trial and asked them if they desired a lawyer. (R., Vol. II at 3.) When they stated that they would waive their right to counsel, the judge responded, "Now, let me go into it a little bit more. You are very young and I want to be sure that there is no slip-up here. Are your f[o]lks here with you?" (R., Vol. II at 3.) The judge spent a significant amount of time asking Williamson and Webster questions regarding their understanding of their right to counsel. Following this colloquy, Williamson and Webster were read and signed a written waiver of counsel in open court.

Before having the indictment read, the judge asked Williamson and Webster when they had received copies of the indictment, whether they understood the charge, and again paraphrased the indictment in simple terms (R., Vol. II at 5). When the court accepted Williamson's plea, the judge asked questions in terms of the elements of the offense, as follows:

THE COURT: John Morgan Williamson, how do you plead to this indictment: guilty or not guilty?

MR. WILLIAMSON: Guilty.

THE COURT: You helped transport this car, did you, from Louisiana to New Mexico?

MR. WILLIAMSON: Yes, sir.

THE COURT: Was it a stolen car?

MR. WILLIAMSON: Yes, sir.

THE COURT: Did you know it was stolen?

MR. WILLIAMSON: Yes, sir.

(R., Vol. II at 7.)

Before accepting the plea, the judge asked Williamson and Webster whether they had been under the influence of liquor or drugs at the time of the offense, whether anyone had threatened them or made promises to induce their pleas, whether they had discussed the matter with their parents, and whether their parents agreed with their decision to plead guilty. (R., Vol. II at 7.)

Williamson was sentenced to two years of probation under the Youth Corrections Act. The record does not clearly show what took place between this 1965 sentencing and October 22, 1984, when the 28 U.S.C. § 2255 motion was filed. The record contains an almost unintelligible portion of a transcript dated April 13, 1981, in which this conviction is mentioned by an unidentified person (R., Vol. I at 11–12). There is also a document entitled "Louisiana Parole Board Decision Form" on which the word "DENIED" appears, with nine reasons checked off, including "history of violence," "escape," "parole unsatisfactory/violated," and "probation unsatisfactory/violated." (R., Vol. I at 13.) From this, we surmise that Williamson has been

convicted and incarcerated on a 1975 manslaughter charge.

On January 18, 1985, Williamson moved to amend his 28 U.S.C. § 2255 motion to include a writ of error *coram nobis* pursuant to 28 U.S.C. § 1651(a). The United States Attorney's office did not oppose the amendment and it was allowed on February 15, 1985. After reviewing the record and briefs submitted by both parties, the United States Magistrate recommended that the 28 U.S.C. § 2255 motion be dismissed for lack of jurisdiction, inasmuch as Williamson has completed his sentence pursuant to the 1965 conviction. He further recommended that the petition for writ of error *coram nobis* be denied. The district court adopted both recommendations.

On appeal, Williamson raises three issues: Whether his waiver of his Sixth Amendment right to the assistance of counsel was done voluntarily and intelligently; whether his guilty plea was voluntary and intelligent; and whether a writ of error *coram nobis* is justified by the facts of this case. Williamson apparently does not contest the dismissal of his motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.

**I.**

Williamson argues that because of his youth, lack of experience with the criminal justice system, distance from home, and the pressure put on him to waive counsel by his co-defendant and parents, the waiver of his Sixth Amendment right to the effective assistance of counsel was not made knowingly, intelligently, and voluntarily.

In *United States v. Weninger*, 624 F.2d 163 (10th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980), we held that in order to ascertain whether an accused has knowingly and intelligently waived his right to counsel, "we must consider 'the total circumstances of the individual case including background, experience and the conduct of the accused person [citing cases].'" In *Weninger*, we held that the defendant had strategically chosen his right to defend himself at trial *pro se* and

could not later complain that he was denied his rights. Citing *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), we noted that:

> To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. 624 F.2d at 164.

■ Each case must be reviewed individually, with the objective of determining whether the judge fully inquired into the circumstances. Thus, for example, in *Shawan v. Cox*, 350 F.2d 909 (10th Cir.1965), the accused, a middle-aged itinerant worker with less than an eighth grade education, was not advised of his rights either before or at the time of his guilty plea. We held that the record showed "an aggravated case of the deprivation of an accused's constitutional right to counsel." *Id.* at 913.

■ Courts indulge every presumption against the waiver of fundamental constitutional rights. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Where the record is silent, no presumption can arise that the accused waived his right to counsel. *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). In *Berryhill v. Page*, 349 F.2d 984 (10th Cir.1965), the accused was illiterate. The record did not show that the trial judge explained either the nature of the charge, the possible sentencing consequence of the plea of guilty, or that the defendant was entitled to appointed counsel. Further, the record did not show an intelligent and understanding rejection of counsel by the accused, or an explanation of an apparent complete defense to a murder charge. We held that the constitutional rights of the accused were violated. *Also see, Tucker v. Anderson*, 483 F.2d 423 (10th Cir.1973); *Smith v. Crouse*, 413 F.2d 979 (10th Cir.

1969). Moreover, doubts concerning an attorney waiver must be resolved in the defendant's favor, *United States v. Harlan,* 696 F.2d 5 (1st Cir.1982), particularly where the trial court has failed to conduct a colloquy into the defendant's reasons for appearing *pro se. Id.* at 7.

However, in the instant case, we do not have an illiterate or uneducated defendant, as in *Shawan v. Cox* and *Berryhill v. Page.* Nor is the record silent on whether the court explained Williamson's Sixth Amendment rights to him. This court need not resort to a presumption. We have no doubts which must be resolved one way or the other.

■ The totality of the circumstances, including the background, experience, and conduct of the defendant, show that Williamson knowingly and intelligently waived his right to counsel. There was a colloquy on the record whereby the court explained Williamson's right to an attorney as well as the nature of the charge and the possible penalties. Consequently, we have no reason to doubt the adequacy of Williamson's understanding of his rights. His youth, distance from his home, and lack of previous courtroom experience notwithstanding, Williamson was not lacking in education, his parents were present in court, and he was given an adequate explanation of his right to counsel. In addition, we do not view the presence of Williamson's parent or parents in court as a source of pressure to waive his right to counsel. In the absence of any evidence to the contrary, we view this as a circumstance supporting our conclusion that Williamson's waiver of counsel was made knowingly, intelligently, and voluntarily.

Finally, in *Bortmess v. Rodriguez,* 375 F.2d 113 (10th Cir.1967), we held that where the accused is found to have expressly waived counsel, the burden falls on him to show by a preponderance of the evidence that his acquiescence was not made with sufficient understanding of his rights to amount to an effective waiver. *See also, Sandoval v. Tinsley,* 338 F.2d 48 (10th Cir.1964). Williamson expressly waived his right to counsel and thereafter failed to carry his burden of proving an ineffective waiver of assistance of counsel.

Williamson's contention that his parents were in a hurry to return to Louisiana is unsupported by the record. Likewise, there is no evidence that his parents were embarrassed, angry, or had incurred substantial costs due to Williamson's arrest. We similarly find no merit in Williamson's contention that a valid waiver of counsel requires an explanation of the law of aiding and abetting, or an explanation of the possible defenses to the charge and a discussion of pretrial motions. We hold that Williamson's Sixth Amendment right to assistance of counsel was not violated by the proceedings on October 8, 1965.

## II.

Williamson contends that his plea of guilty was not made knowingly and intelligently and that a conviction based on such a plea is a violation of his Fifth Amendment right to due process of law. *See, Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The entry of a guilty plea in federal court has long been governed by Rule 11, Fed.R.Crim.P., 18 U.S.C. This rule has been changed a number of times since 1944, when it was first propounded. In its present form, Rule 11 bears only a slight resemblance to its form in 1965, when Williamson entered his plea. In support of his contention that his plea was not made knowingly and intelligently, Williamson cites a large number of Rule 11 cases, many of which construe Rule 11 only in its present form. The original 1944 version of Rule 11, which was in effect in 1965 when Williamson entered his plea, provided as follows:

> The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. . . .

In *United States v. Dayton,* 604 F.2d 931 (5th Cir.), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1979), the Court held that guilty pleas pursuant to this ver-

sion of Rule 11 needed only to meet minimum requirements of voluntariness and show that "the defendant knows what it is he is admitting, so that he does not mistakenly consent to be punished for a crime he did not commit." *Id.* at 935.

In *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court construed the language of Rule 11 as it existed in 1965 and held that "Rule 11 expressly directs the district judge to inquire whether a defendant who pleads guilty understands the nature of the charge against him and whether he is aware of the consequences of his plea." *Id.* at 464, 89 S.Ct. at 1169. Although *McCarthy* was not applied retroactively, *Halliday v. United States,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), *reh'g denied,* 395 U.S. 971, 89 S.Ct. 2106, 23 L.Ed.2d 761, it is significant to us that Williamson's plea would nevertheless have satisfied both *Dayton* and *McCarthy* requirements, and would exceed the minimum standards applicable in 1965.

Even if there had been a violation of Rule 11 as it was construed in 1965, it would not change the outcome of this case. In *United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), the Supreme Court held that a formal violation of Rule 11 was neither constitutional nor jurisdictional. In the absence of a "complete miscarriage of justice" or a proceeding "inconsistent with the rudimentary demands of fair procedure," there is no right to collateral relief. *Id.* at 784, 99 S.Ct. at 2087.

■ It is clear in the record that the judge inquired at length concerning Williamson's express statement that he wanted to waive counsel. As discussed earlier, an express waiver of counsel shifts the burden to the defendant to establish that he did not act knowingly and intelligently. This the appellant has failed to do.

Williamson argues that his plea could not have been made knowingly and intelligently because the judge did not advise him of the elements of the offense to which he was pleading, or of possible defenses, nor did the judge enumerate the various rights Williamson was waiving by his plea.

We note, however, that on two occasions the judge paraphrased the indictment and on one occasion had the indictment read in open court. This is in contrast to *Munich v. United States,* 337 F.2d 356 (9th Cir. 1964), in which there was no colloquy between the judge and the defendant. Instead, in *Munich,* the clerk merely asked the defendant what his plea was. The acceptance of a plea under those circumstances was plainly in violation of Rule 11.

In *Mack v. United States,* 635 F.2d 20 (1st Cir.1980), the court stated, "we realize that there are indictments as to which a simple reading is the only explanation necessary." *Id.* at 25, n. 2. For example, in *United States v. Dayton, supra,* in discussing the more stringent requirements of Rule 11 after December 1, 1975, the Court held that "for simple charges such as those in this case, a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice." *Id.* at 938. 18 U.S.C. § 2312 is not a complex crime with numerous elements, and a simple reading of an indictment is unlikely to confuse or mislead the average defendant. The three elements of a violation of the Dyer Act are: (1) transporting in interstate or foreign commerce, (2) a stolen motor vehicle or aircraft, (3) knowing it to be stolen. The judge amply covered these elements in taking Williamson's plea. We see no error in the manner in which the court apprised Williamson of the charge. In *Nash v. Israel,* 707 F.2d 298 (7th Cir.1983), by contrast, the defendant stated on the record that he did not understand the charge, yet the court did not explain it to him. In *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the defendant was not advised that intent was an element of second degree murder, to which he had pleaded. There is no such failure by the court in the case at bar.

■ Williamson further contends that he should have been advised of possible de-

fenses to the charge. We can find no authority for this contention. In the few cases in which the subject comes up, it is dictum. In *United States v. Fry*, 738 F.2d 196 (7th Cir.1984), and *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), the issue was that no Rule 11 colloquy took place whatsoever. In *Sober v. Crisp*, 644 F.2d 807 (9th Cir.1981), the court commented in a footnote, "the accused should be made aware of possible defenses, at least where the attorney or *court is made aware of facts that would constitute such a defense.*" *Id.* at 809 (emphasis supplied). We can think of no reason why a judge would be aware of possible defenses to a charge unless he is made aware of them by the defendant in the course of establishing a factual basis for the plea. Even then, the judge would be unable to suggest all possible defenses. We hold that due process, in and of itself, does not require any such thing.

Moreover, as pointed out above, in the case at bar the judge inquired whether Williamson was under the influence of drugs or alcohol, inasmuch as intoxication was presumably a possible defense to 18 U.S.C. § 2312. Given that Williamson had admitted all three elements of the offense, we cannot discern any reason for the judge to have delved further into possible defenses.

■ Finally, we find no merit in Williamson's contention that the judge should have enumerated the rights Williamson was waiving by his plea, such as the privilege against compelled self-incrimination, the right to confront the witnesses against him, to cross examine such witnesses, to present witnesses on his own behalf, and to require the government to prove its case beyond a reasonable doubt. Advising the defendant of these rights was not required under Rule 11 in 1965. *See, Stinson v. Turner*, 473 F.2d 913 (10th Cir.1973), where we said, "We do not believe that *Boykin* requires the enumeration of rights and the multiple waivers contended for ... instead, we agree with the Fourth and Fifth Circuits that such detailed waivers on

the record are not required...." *Id.* at 916. *Also see, United States v. Frontero*, 452 F.2d 406 (5th Cir.1971); *United States v. Sherman*, 474 F.2d 303 (9th Cir.1971).

We hold that Williamson's Fifth Amendment due process rights were not violated, that the trial court properly advised Williamson of these rights and that Williamson's plea of guilty was made knowingly, intelligently and voluntarily.

### III.

■ Our discussion and conclusions in **I.** and **II.**, *supra*, render unnecessary a detailed discussion of whether Williamson is entitled to a writ of error *coram nobis*. In *Korematsu v. United States*, 584 F.Supp. 1406 (N.D.Cal.1984), the court held that the writ of error *coram nobis* is "available to correct errors that result in a complete miscarriage of justice." *Id.* at 1419. In *Casias v. United States*, 421 F.2d 1233 (10th Cir.1970), we stated, quoting from *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1967): "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right to review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *Id.* at 1234. Thus, absent a complete miscarriage of justice, and where there have been no serious, fundamental violations of Williamson's constitutional rights, society's interest in finality would not be served by granting the relief requested.

■ In contradiction to Williamson's contention, the record shows that Williamson's parole or transfer status has been affected by his prison behavior, (R., Vol. I, Supp., at 13; R., Vol. I at 13), and by his behavior since his conviction in 1965, rather than the 1965 conviction. In *Ward v. United States*, 381 F.2d 14 (10th Cir.1967), we held that where the only thing taken into account at the time a prisoner applies for parole is his prison record, and where this record shows the prisoner has been subsequently convicted and sentenced for a number of other, more serious, offenses, no

circumstances compelling a writ of error *coram nobis* have been shown. As noted above, Williamson's prison record is not exemplary, and he is currently incarcerated on a manslaughter conviction. This is a far more serious charge than the 1965 Dyer Act conviction. The record demonstrates that Williamson's due process rights were not violated at his 1965 plea hearing. Consequently, nothing in the record leads to the conclusion that a miscarriage of justice has taken place.

AFFIRMED.